UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAHINDRA & MAHINDRA LTD., ET AL.,

    Plaintiffs,

    v.

FCA US LLC,

    Defendant.

Case No. 18-cv-12645

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [#3]

### I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Preliminary Injunction. Plaintiffs request this Court grant a preliminary injunction to enjoin Defendant from bringing a complaint against them in the International Trade Commission ("ITC") and participating in the ITC investigation of Plaintiffs. For the reasons discussed below, this Court will DENY Plaintiffs' Motion.

### II. FACTUAL BACKGROUND

This case involves a trademark dispute. Plaintiffs are Mahindra & Mahindra Ltd. ("M&M") and Mahindra Automotive North America, Inc. ("MANA"). Plaintiffs supply small tractors to farmers in the United States, as well as other off-

road vehicles. Dkt. No. 3, pg. 12 (Pg. ID 87). MANA, a subsidiary of M&M, is a domestic company that manufactures off-road vehicles in the United States. *Id.* at pg. 13 (Pg. ID 87). The Defendant is FCA US LLC (also known as Fiat). Defendant is responsible for creating the Jeep® brand. *See* Dkt. No. 21, pg. 10 (Pg. ID 303).

In 2008, Plaintiff M&M planned to launch a new vehicle called the SCORPIO in the United States. Dkt. No. 3, pg. 13 (Pg. ID 88). M&M planned for the SCORPIO vehicle to include a grille with 6.5 angled vertical slots. *Id.* Chrysler Group LLC, which was renamed FCA US LLC (i.e., Defendant) objected to the design of the grille. *Id.* at pgs. 13–14 (Pg. ID 88–89). Chrysler asserted that the SCORPIO grille infringed on its trademark in grilles with seven parallel vertical slots. *Id.* at pg. 14 (Pg. ID 89). Throughout 2008 and 2009, M&M and Chrysler engaged in negotiations to resolve the dispute. *Id.* On October 16, 2009, the companies agreed on an "Approved Grille Design" that M&M could use on the SCORPIO and any other vehicles that M&M created. *Id.*; Dkt. No. 4-2. The Approved Grille Design is a grille that contains 4.5 angled vertical slots with an "M" logo mark on top of the half slot. *Id.* The agreement between the parties stated, in part:

> Chrysler consents to the use and incorporation of the grille design shown in Exhibit A (hereinafter the "Approved Grille Design") in vehicles sold and advertised in the United States by

-2-

> Mahindra and/or its affiliates and authorized dealers. Chrysler agrees and warrants that it will not assert against Mahindra, its affiliates, authorized dealers, or customers, or anyone else, any claim for infringement of Chrysler's trade dress, trademark, or other intellectual property rights in the United States based on: (1) a grille having the Approved Grille Design; or (2) a vehicle containing or using the Approved Grille Design.

Dkt. No. 4-2, pgs. 4–5 (Pg. ID 130–31). In 2015, MANA designed and manufactured an off-road-only vehicle for sale in the United States, named the ROXOR. Dkt. No. 3, pg. 16 (Pg. ID 91). The ROXOR vehicle contains a grille with 4.5 angled vertical slots and an "M" logo mark on the top of the half slot. Dkt. No. 3, pg. 16 (Pg. ID 91). The ROXOR launched in March of 2018. *Id.* The ROXOR vehicle was designed in Michigan. Dkt. No. 4, pg. 7 (Pg. ID 119). The parts for the ROXOR are sourced from numerous foreign and domestic vendors. *Id.* The ROXOR is built at a manufacturing facility in Auburn Hills, Michigan that employs over 400 employees. *Id.* The facility only manufactures the ROXOR vehicle. *Id.*

Defendant believes that the ROXOR vehicle does not use the Approved Grille Design, but uses a variation of the Approved Grille Design that the parties did not agree on. Defendant also believes that the ROXOR infringes the Jeep® brand trade dress. On August 1, 2018, Defendant filed a complaint with the ITC, requesting that the ITC institute an investigation into Plaintiffs for possible infringement of its intellectual property. Dkt. No. 6-3.

Plaintiffs filed their complaint against Defendant on August 23, 2018. Dkt. No. 1. The complaint brings a count of breach of contract, tortious interference with business expectancies, unfair competition, requests a declaratory judgment of non-infringement, and requests a cancellation of several of Defendant's United States trademark registrations. *Id.* On August 23, 2018, Plaintiffs also filed their Motion for Preliminary Injunction, seeking to enjoin Defendant's complaint in the International Trade Commission. Dkt. No. 2. Defendant responded on September 7, 2018. Dkt. No. 21. Plaintiffs filed their reply on September 14, 2018. Dkt. No. 30. On September 18, 2018, Defendant filed a motion to stay all proceedings pending the ITC's investigation of Plaintiffs. Dkt. No. 37. The briefing period on the motion to stay has not yet concluded.

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). A preliminary injunction seeks to "maintain the status quo pending a final hearing regarding the parties' rights." *All. for Mentally Ill of Mich. v. Dep't of Cmty. Health*, 588 N.W.2d 133, 137 (Mich. Ct. App. 1998). Whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network,*

*L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540–41 (6th Cir. 2007). The Court must balance four factors in determining whether to grant a request for a preliminary injunction. *Id.* at 542. Those factors are:

(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.

*Id.* In addition, a court should not grant a preliminary injunction where an adequate legal remedy is available. *Pontiac Fire Fighters Union Local 376 v. City of Pontiac*, 753 N.W.2d 595, 600 (Mich. 2008). Applying the factors, the Court does not find that injunctive relief is appropriate at this time.

## IV. DISCUSSION

1. Likelihood of Success on the Merits

First, the Court must determine whether the movant has demonstrated a strong likelihood of success on the merits. This case involves a contract dispute. Contracts should be interpreted according to their plain and ordinary meaning. *Wells Fargo Bank, NA v. Cherryland Mall Ltd. P'ship*, 835 N.W.2d 593, 607 (Mich. Ct. App. 2013). "[I]f contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations,

factual development is necessary to determine the intent of the parties . . . ." *Id.* (quoting *Holmes v. Holmes*, 760 N.W.2d 300, 311 (Mich. Ct. App. 2008)).

Plaintiffs assert that the language of the contract is clear: Defendant agreed to refrain from asserting infringement claims against a Mahindra vehicle that uses the Approved Grille Design. Dkt. No. 3, pg. 25 (Pg. ID 100). Plaintiffs state that the ROXOR uses the Approved Grille Design; therefore, Defendant cannot file suit against them. *Id.* Defendant argues that the ROXOR grille is not the Approved Grille Design. Dkt. No. 21, pg. 17 (Pg. ID 310). Defendant states that the ROXOR grille is taller and more square than the Approved Grille Design and also includes circular headlights, similar to the Jeep, that were not included in the Approved Grille Design. *Id.* at pgs. 19–20 (Pg. ID 312–13). Further, Defendant contends that its ITC complaint is based on more than the ROXOR grille. *Id.* The ITC complaint also asserts infringement of the Jeep® trade dress. *Id.* at pg. 10 (Pg. ID 303). That is, Defendant's ITC complaint asserts that the ROXOR looks like a Jeep, such that consumers believe that it is a part of the Jeep® brand. Dkt. No. 6-3, pgs. 15–18 (Pg. ID 170–73).

> The agreement between the parties states, in part:
>
> Chrysler consents to the use and incorporation of the grille design shown in Exhibit A (hereinafter the "Approved Grille Design") in vehicles sold and advertised in the United States by Mahindra and/or its affiliates and authorized dealers. Chrysler agrees and warrants that it will not assert against Mahindra, its affiliates, authorized dealers, or customers, or anyone else, any

> claim for infringement of Chrysler's trade dress, trademark, or other intellectual property rights in the United States based on: (1) a grille having the Approved Grille Design; or (2) a vehicle containing or using the Approved Grille Design.

Dkt. No. 4-2, pgs. 4–5 (Pg. ID 130–31). Defendant argues that the grille used on the ROXOR is not the Approved Grille Design because the ROXOR grille is taller and contains circular headlights, like the Jeep. *Id.* at pgs. 19–20 (Pg. ID 312–13). Plaintiff responds that it is nonsensical that the ROXOR grille does not conform to the Approved Grille Design because the agreement did not indicate the dimensions of the Approved Grille Design. Dkt. No. 30, pg. 6 (Pg. ID 579). Therefore, the length and size of the ROXOR grille cannot violate the parties' contract. *See id.*

Plaintiffs assert that the plain language of the agreement states that Defendant will not bring suit for "a vehicle containing or using the Approved Grille Design." Dkt. No. 30, pg. 11 (Pg. ID 584). The ROXOR is a vehicle that uses the Approved Grille Design; therefore, Plaintiffs argue that they have not violated the plain terms of the contract. *Id.* Defendant responds that it is nonsensical that the contract bars any infringement suit as long as a vehicle contains the Approved Grille Design. Dkt. No. 21, pg. 22 (Pg. ID 315). Defendant contends that would mean that any Mahindra vehicle could infringe on Defendant's intellectual property as long as it used the Approved Grille Design. *Id.* Defendant further states that it never agreed to forego claims "against" a vehicle using the Approved Grille Design. *Id.* It

agreed to forego claims "based on" a vehicle containing or using the Approved Grille Design.

This Court finds that Plaintiffs cannot show that they are likely to succeed on the merits of their claim. Defendant initiated the ITC action against Plaintiffs for using a non-approved grille design, and also for infringing on its trade dress. Plaintiffs do not present evidence sufficient to show that they can succeed on Defendant's claim of trade dress infringement. The plain language of the contract prohibits suits based on a grille that has the Approved Grille design, and based on a vehicle containing or using the Approved Grille Design. Defendant's ITC complaint is thus outside the scope of the parties' 2009 agreement because it asserts claims that are not based on the Approved Grille Design or based on a vehicle containing the Approved Grille Design. Without more evidence concerning the trade dress infringement, this Court cannot find that Plaintiffs are likely to succeed on their claim against Defendant.

2. Irreparable Harm

To satisfy the second factor, a party must demonstrate that unless the injunction is granted, he or she will suffer "'actual and imminent harm' rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "[H]arm is not irreparable if it is fully compensable by money damages . . . ." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). An injury

cannot be fully compensable by money damages if damages are difficult to calculate based upon the nature of the plaintiff's loss. *Id.*

Plaintiffs argue that they will suffer irreparable harm without the issuance of a preliminary injunction. Dkt. No. 3, pg. 27 (Pg. ID 102). Plaintiff MANA states that it has lost goodwill from existing and prospective customers. Dkt. No. 3, pg. 27 (Pg. ID 102). MANA has received numerous inquiries from concerned dealers, business partners, vendors, and the press since Defendant filed its action in the ITC. *Id.* at pg. 28 (Pg. ID 103); Dkt. No. 5, pgs. 6–10 (Pg. ID 138–142). Numerous media articles have also damaged MANA's business reputation. Dkt. No. 3, pg. 29 (Pg. ID 104). This is especially harmful for MANA because it is a new company. *See id.* Plaintiff MANA also states that third party concerns have dampened the morale of employees at the company. Dkt. No. 3, pg. 28 (Pg. ID 103). Defendant asserts that the cited media articles are not enough to demonstrate irreparable harm to Plaintiffs. Dkt. No. 21, pg. 27 (Pg. ID 320).

This Court finds that Plaintiffs will be subjected to some harm but not irreparable harm without the issuance of an injunction. As Plaintiffs demonstrate, the instigation of Defendant's lawsuit in the ITC has caused some harm to their business reputations. However, a preliminary injunction should not issue where there is an adequate remedy at law for breach of contract. *See Pontiac Fire Fighters Union*, 753 N.W.2d at 600. Damages for lost business that Plaintiffs may

suffer can be compensated with money damages, so harm to Plaintiffs is not irreparable.

### 3. Substantial Harm to Others

The third factor requires this Court to consider whether the issuance of the injunction would cause substantial harm to others.

Plaintiffs assert that the issuance of an injunction would not cause substantial harm to Defendant because the parties do not compete in the marketplace; thus, Defendant will not be losing out on any sales. Dkt. No. 3, pg. 31 (Pg. ID 106) Defendant contends that issuance of a preliminary injunction will harm it because it should be allowed to pursue its intellectual property rights against infringers. Dkt. No. 21, pg. 28 (Pg. ID 321). Defendant asserts that it will suffer "irreparable harm due to its loss of control over its trade dress and an improper association in the minds of consumers between the Roxor and FCA." *Id.* at pg. 29 (Pg. ID 322).

This Court finds that issuance of a preliminary injunction would cause harm to Defendant. The resolution of Defendant's suit against Plaintiffs has not been decided. Therefore, it is possible that Plaintiffs are infringing on Defendant's intellectual property rights. Further, Defendant is subject to harm from the confusion the ROXOR creates among consumers that it is a part of the Jeep® brand. This confusion can in turn cause a loss of business to Defendant if

consumers purchase a ROXOR assuming that it is a part of the Jeep® brand. So this Court cannot find that Defendant would not be harmed if it granted Plaintiffs' Motion.

4. Public Interest

The final factor to consider is "whether the public interest would be served by granting the . . . preliminary injunction." *Abney*, 443 F.3d at 552–53. Plaintiffs argue that the public interest is served by an injunction because the Defendant violated their contract agreement concerning the Approved Grille Design, and the public has an interest in the enforcement of contracts. Dkt. No. 3, pg. 32 (Pg. ID 107). Additionally, issuance of an injunction will remove the risk to American workers' jobs at the Auburn Hills manufacturing facility. *Id.* Lastly, an injunction will continue the existing and potential investment made in Southeast Michigan. *Id.* Defendant contends that the public interest weighs in favor of denying the injunction because the public has a strong interest in prohibiting unfair acts caused by importation. Dkt. No. 21, pg. 30 (Pg. ID 323). Defendant asserts there is also a strong public interest in protecting intellectual property. *Id.*

The Court finds that both parties bring credible arguments that the public interest would be served if the Court were to rule in their respective favors. So this factor is neutral in weighing the factors for injunctive relief.

5. Preliminary Injunction as the Appropriate Remedy

Defendant asserts that a preliminary injunction is the improper remedy. Dkt. No. 21, pg. 31 (Pg. ID 324). A preliminary injunction seeks to "maintain the status quo pending a final hearing regarding the parties' rights." *All. for Mentally Ill of Mich. v. Dep't of Cmty. Health*, 588 N.W.2d 133, 137 (Mich. Ct. App. 1998). Defendant states that a preliminary injunction will not maintain the status quo because it would switch the venue for this action from the ITC to the Eastern District of Michigan. Dkt. No. 21, pg. 31 (Pg. ID 324). However, without an injunction, the status quo is preserved because Plaintiff will continue to sell the ROXOR and the parties will continue to await a trial on the merits of Defendant's claim against Plaintiffs. *Id.* Defendant asserts that there is no reason that Defendant's intellectual property claims cannot be litigated in the ITC. Defendant was the first party to instigate legal action concerning the subject matter of this action, in the ITC. Therefore, Defendant contends that legal proceedings should continue in the ITC. *Id.* On September 18, 2018, Defendant filed a motion to stay all proceedings pending the conclusion of the ITC investigation. Dkt. No. 37. The time for Plaintiff to respond to the motion for stay has not yet expired.

Upon review of the parties' arguments, this Court finds that a preliminary injunction is not warranted. Plaintiffs cannot show a likelihood of success on the

merits. Balancing this conclusion with the remaining factors that this Court must consider, this Court finds that Defendant must prevail.

## V. CONCLUSION

For the reasons discussed herein, the Court will deny Plaintiffs' Motion.

SO ORDERED.

Dated: October 2, 2018

                              s/Gershwin A. Drain
                              HON. GERSHWIN A. DRAIN
                              United States District Court Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 2, 2018, by electronic and/or ordinary mail.

                              s/Teresa McGovern
                              Case Manager Generalist