UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAHINDRA & MAHINDRA LTD. AND
MAHINDRA AUTOMOTIVE NORTH
AMERICA, INC.,

Plaintiffs / Counterclaim
Defendants,

v.

FCA US LLC,

Defendant / Counterclaim
Plaintiff.

Case No. 18-cv-12645

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [#417]

### I. INTRODUCTION

On August 23, 2018, Plaintiffs Mahindra & Mahindra Ltd. and Mahindra Automotive North America, Inc. ("Plaintiffs") filed the instant action against Defendant FCA US LLC's ("Defendant"). ECF No. 1. On November 8, 2018, Defendant counterclaimed with, among other claims, false-advertising claims which could not be adjudicated before the International Trade Commission ("ITC"). ECF No. 47.

Presently before the Court is Plaintiffs' Motion for Summary Judgment of No False Advertising, which was filed on October 14, 2020. ECF No. 417. This Motion

-1-

is fully briefed.  Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter.  Accordingly, the Court will resolve Plaintiffs' Motion on the relevant briefs.  *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court will **DENY** Plaintiffs' Motion for Summary Judgment [#417].

## II. BACKGROUND

### A. Early Proceedings in this Court

This case involves a trademark dispute.  According to Plaintiffs, Mahindra & Mahindra Ltd. ("M&M") entered into an agreement with Defendant[1] in 2009 ("2009 Agreement") for a grille design on vehicles that did not infringe on Defendant's Jeep brand grille design.  ECF No. 1, PageID.1–2.  Mahindra Automotive North America, Inc. ("MANA") then implemented this design in an off-road-only vehicle.  *Id.*  In 2015, MANA designed and manufactured an off-road-only vehicle for sale in the United States, named the Roxor.  *Id.* at PageID.8.  Plaintiffs allege that the Roxor incorporates the "Approved Grille Design," which M&M and Defendant allegedly agreed to in their 2009 contract negotiations.  *Id.*

On August 1, 2018, Defendant filed a complaint with the ITC against Plaintiffs, alleging that the Roxor vehicle infringes its Jeep-related intellectual

---

[1] Plaintiffs entered into an agreement with Chrysler Group LLC, which Defendant FCA US LLC eventually took over.  ECF No. 1, PageID.5.

property. *See* ECF No. 1-3. Plaintiffs then filed their Complaint and Motion for Preliminary Injunction in this Court on August 23, 2018. ECF Nos. 1, 3. Defendant answered and brought counterclaims asserting trademark and trade-dress infringement claims similar to those it asserted before the ITC, as well as a false-advertising claim. ECF No. 47.

On October 25, 2018, the Court issued a Scheduling Order, which included a December 10, 2019 trial date. ECF No. 42. The actions in the ITC and this Court then proceeded in parallel. On April 2, 2019, the Court granted Defendant's Motion to Dismiss Counts II and III of Plaintiffs' Complaint. ECF No. 63. The following claims from Plaintiffs' Complaint remain in the present matter: breach of contract (Count I); declaratory judgment of non-infringement (Count IV); and cancellation of certain trademark registrations (Count V). Moreover, Defendant's ten counterclaims, which are similar to those it asserted before the ITC, along with a false-advertising claim, remain pending before this Court. *See* ECF No. 47.

### B. ITC Proceedings and Determinations

The ITC proceedings were divided into two phases. ECF No. 400, PageID.42211. First, the ITC conducted an initial "100-day proceeding" to determine whether the parties' 2009 Agreement barred Defendant's suit. *Id.* Following a two-day evidentiary hearing, the ITC concluded that (1) the 2009 Agreement was not ambiguous, ECF No. 55-1, PageID.1404; (2) the Roxor grille

did not embody the Approved Grille Design shown in Exhibit A of the 2009 Agreement, ECF No. 55-1, PageID.1410; and (3) Defendant's claims in its suit were not implicated by the 2009 Agreement, ECF No. 55-1, PagID.1410. Upon Plaintiffs' petition to the full Commission, the ITC concluded that the ALJ's determination was "the determination of the Commission" itself. *See* ECF No. 60-1.

Second, the ITC conducted an evidentiary hearing on the merits, which included five days of testimony and argument, as well as two rounds of post-hearing briefing. ECF No. 400, PageID.42212. On November 8, 2019, the ITC issued its Initial Determination. *See* ECF No. 400-2.

The parties subsequently filed petitions seeking review of certain findings pursuant to 19 C.F.R. § 210.43. ECF No. 400, PageID.42212; ECF No. 409, PageID.42617. Plaintiffs sought review of the findings on functionality, genericism, secondary meaning, and infringement of the Asserted Jeep Trade Dress. ECF No. 409, PageID.42617. Defendant sought review of the finding of non-infringement of the Registered Grille Mark. *Id.* Defendant did not petition for review of its losses on claims for infringement of the '873 Mark or dilution of the '873 Mark, Registered Grille Marks, and unregistered Asserted Jeep Trade Dress. *Id.*

On June 11, 2020, the Commission issued its Final Determination. *See* ECF No. 397-1. The Commission concluded that the Roxor vehicle infringes Defendant's Jeep Trade Dress; Plaintiffs' actions in importing and selling the infringing vehicle

harm Defendant; Plaintiffs violated Section 337 by engaging in unfair trade; and that the Roxor vehicle does not infringe the Registered Grille Marks. ECF No. 400, PageID.42214; ECF No. 409, PageID.42617. The sixty-day Presidential Review Period ("PRP"), during which the President or his delegate, the U.S. Trade Representative, has plenary authority to disapprove of the ITC's determination and orders, concluded on August 11, 2020. ECF No. 409, PageID.42618.

### C. Recent Proceedings in this Court

On October 17, 2019, Plaintiffs moved the Court to adjourn its December 2019 trial date. ECF No. 208. Plaintiffs explained that a short adjournment would "avoid duplicative litigation" before the ITC and would not result in a harm to the parties or the public. *Id.* at PageID.17429. The Court granted Plaintiffs' Motion after meeting with the parties for a Status Conference. ECF No. 209. The Court determined that a "limited adjournment of the trial date and pretrial conference will serve the interests of judicial economy, conserve the parties' resources, and avoid duplicative litigation and the risk of inconsistent or conflicting decisions." *Id.* at PageID.17455.

In June 2020, the parties met for a Status Conference one week after the Commission issued its Final Determination. At the Conference, the parties maintained that the ITC's decision would narrow the issues presently before this

Court.  *See* ECF No. 403, PageID.42347.  The Court provided the parties with an Amended Scheduling Order at the conclusion of this Conference.  *See* ECF No. 399.

On October 8, 2020, the Court entered an Opinion and Order granting both Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment.  ECF No. 416.  Counts I and IV, as it related to trade-dress infringement, of Plaintiffs' Complaint were therefore dismissed with prejudice. Defendant's Counterclaim Count I was also granted in its favor.  Moreover, Count IV of Plaintiffs' Complaint, as it related to infringement of U.S. Trademark Registration Nos. 4,272,873; 2,862,487; 2,161,779; 2,794,553 and 4,043,984; and Defendant's Counterclaim Counts II, III, IV, as it related to infringement of U.S. Trademark Registration Nos. 4,272,873; 2,862,487; 2,161,779; 2,794,553 and 4,043,984, V, and VI were dismissed with prejudice.

### D. Plaintiffs' Present Motion

Plaintiffs now move the Court for summary judgment in their favor on Defendant's two false advertising counterclaims: Count VII, concerning the Lanham Act, and Count IX, concerning Mich. Comp. Laws § 445.903(1)(a) and (c). Defendant brings these counterclaims based on Plaintiffs' commercial (hereinafter, "Advertisement") for the 2018-2019 ROXOR vehicle (hereinafter, "Roxor"). Plaintiffs manufactured and sold the Roxor between March 2018 and December 2019.  ECF No. 417, PageID.42733.  Plaintiffs explain that the Roxor's design and

construction is "based on a long line of military-style vehicles that [they] have been manufacturing and selling in India and around the world for over 70 years, since the end of World War II."  *Id.*

The Advertisement at issue is a thirty-second commercial which aired in September and October 2018 on ESPN, ESPN2, and the Roxor's social media platforms.  *Id.* at PageID.42734.  The Advertisement features Roxor vehicles of various colors driving on unpaved mountain trails, along with various images of individuals camping, hiking and chain-sawing logs.  *Id.*  It also includes various military imagery and references.  ECF No. 435, PageID.43717.  According to Defendant, "more than 20 seconds" of the 30-second Advertisement displays such military-inspired elements, including the U.S. Army star logo, a vehicle operator wearing camouflage in a camouflage vehicle, an Army green version of the Roxor, a man dressed in Army green attire, and the Roxor logo on an Army green background.  *Id.* at PageID.43716–17.  Plaintiffs emphasize that the U.S. military "is never mentioned in the commercial."  ECF No. 417, PageID.42736.

The Advertisement's voice-over script is as follows:

When the mission calls for military grade grit, call in an off-road vehicle built on more than 70 years of hardcore heritage.  The one that makes "there's no way we're getting out of here" the best news you've heard all day, and answers menacing terrain with, "Is that all you've got?  Get out there in legendary off-road vehicle: Roxor, from Mahindra.  There's plenty to be done.

*Id.*  Defendant argues that the voice-over's military references, including "military grade grit" and "70 years of heritage," combined with the Advertisement's military imagery, make clear that the Advertisement evokes a false connection between the U.S. military and the Roxor.   ECF No. 435, PageID.43717–18.   Moreover, Defendant contends that the advertisement, by evoking the U.S. military, "suggests a shared-legacy between the Roxor vehicle and the Jeep® brand and the Jeep® brand's U.S. [mi]litary's heritage." *Id.* at PageID.43718.  Defendant thus brings two counterclaims concerning the Advertisement.   First, Defendant alleges that the Advertisement is false, misleading, confusing, and deceptive in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count VII).  ECF No. 47, PageID.1133.  Second, Defendant avers that Plaintiffs' promotion of the Roxor as "Hardcore Heritage" misrepresents that the vehicle has sponsorship, approval, or characteristics that it does not have in violation of the Michigan Deceptive Trade Practices Act, Mich. Comp. Laws § 445.903(1)(c) (Count IX). *Id.* at PageID.1135–36.

Defendant hired expert witness Hal Poret to conduct a consumer perception survey (hereinafter, "the Poret survey") in support of its false advertising claims. ECF No. 435, PageID.43720.  The Poret survey aimed to "determine the extent to which, if at all, the [Advertisement] communicates to a significant percentage of consumers that the Mahindra Roxor vehicle has been used by or has an affiliation or

association (past or present) with the United States military." ECF No. 417, PageID.42737 (citing ECF No. 417-8, PageID.42815). Some of Poret's key findings include the following: (1) at least 46.3% of respondents believe that the Roxor has been used by the military or has a military history/heritage; (2) 70.4% of respondents believe that the Roxor is connected to the military; and (3) 37.0% of respondents believe that the Advertisement's message pertains to the U.S. military. ECF No. 417-8, PageID.42827. Plaintiffs emphasize that "[t]here is no evidence in the record that a single Roxor vehicle buyer saw the Advertisement." ECF No. 417, PageID.42738.

In their present Motion, Plaintiffs argue that Defendant cannot meet its burden of proof to show that the challenged statements in the Advertisement were false or misleading and (1) actually or tend to deceive a substantial portion of the intended audience; (2) are material in that they likely influenced the deceived consumer's purchasing decisions; and (3) have any causal link to FCA's claimed harm. ECF No. 417, PageID.42732. Defendant contends that the factual record demonstrates that the Advertisement creates "the false impression that the Roxor has a history, heritage, or affiliation with the U.S. [m]ilitary, when no such history, heritage, or affiliation exists." ECF No. 435, PageID.43714. Moreover, Defendants assert that the Advertisement "is just one more addition to [Plaintiffs'] well-documented efforts

to trade on [its] history and goodwill in the Jeep® brand." *Id.*  Plaintiffs timely filed a Reply.  ECF No. 441.

### III. LAW & ANALYSIS

#### A. Legal Standard

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted).  The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986).  No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

#### B. Analysis

Plaintiffs moves for summary judgment on Defendant's false advertising claims under the Lanham Act (Counterclaim Count VII) and its state law counterpart

(Counterclaim Count IX).  To prove a claim of false advertising under the Lanham

Act, a plaintiff must establish the following elements:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff.

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999) (citations omitted).  The same federal trademark principles apply to Michigan state and common law.  *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 845 (6th Cir. 2010) ("The elements of all these claims are the same, as is the analysis—failure under one is failure under all."); *see also MAG Auto. LLC v. Gadra Enters., Inc.*, No. 2:16-cv-12049, 2018 WL 3740756, at *9 (E.D. Mich. Aug. 7, 2018).

In their present briefs, the parties do not address whether the Advertisement was introduced into interstate commerce.  The Court will assess the remaining four elements in its analysis below.

### 1. False or Misleading Statements of Fact and Tendency to Deceive (Elements One and Two)

As to the first element, Plaintiffs argue that Defendant cannot prove the Advertisement contains false or misleading statements of fact.  ECF No. 417, PageID.42740.  They first contend Defendant is unable to show that the statements

at issue in the Advertisement are literally false. *Id.* at PageID.42741. Plaintiffs also assert that Defendant cannot establish that the challenged statements are misleading. *Id.* at PageID.42743. In its Response, Defendant argues that, at minimum, there is sufficient evidence to demonstrate that the Advertisement is misleading and has a tendency to deceive. ECF No. 435, PageID.43727. Defendant also puts forth a literal-falsity argument. *See id.* at PageID.43725. The Court will address each route to establish a false advertising claim under the Lanham Act below.

As an initial matter, the Court denotes that in Defendant's counterclaims, it alleges that the following, specific phrases falsely and deceptively "attempt[] to draw a connection to the U.S. military": (a) "[w]hen the mission calls for military grade grit"; (b) [c]all in an off-road vehicle built on more than 70 years of hardcore heritage"; (c) "[g]et out there in a legendary off-road vehicle: Roxor, from Mahindra." ECF No. 47, PageID.1115. Additionally, Defendant claims that Plaintiffs' actions are exacerbated by the inclusion of black-and-white footage of the Willys Jeep® during World War II. *Id.* at PageID.1116. The Court's analysis will thus focus on these specific instances from the Advertisement.

Moreover, the Court takes notice of Plaintiffs' argument that the aforementioned statements are "not objectively measurable statements and constitute opinion, not fact." ECF No. 417, PageID.42741. They assert that the statements, as well as the imagery of the historical military vehicle, convey the car

company's "non-actionable commercial opinion of the superior performance and durability" of the Roxor.  *Id.*  A claim under section 43(a) of the Lanham Act must be based upon a statement of fact, not of opinion.  *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999).  Indeed, "mere puffery … is not actionable under the Lanham Act." *Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 699 (6th Cir. 2003) (citation omitted).

Other circuit courts have discussed puffery at some length.  For example, the Ninth Circuit has defined "puffing" as "exaggerated advertising, blustering and boasting upon which no reasonable buyer would rely."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (citation omitted).  The Fifth Circuit has identified "non-actionable 'puffery'" in another form: "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion."  *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).

Upon review of the Advertisement, considering such evidence in the light most favorable to Defendant, the Court agrees with Defendant that the statements and imagery at issue are actionable under the Lanham Act.  The Sixth Circuit has explained that "context matters" in a court's analysis of challenged statements.  *See Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 272 (6th Cir. 2018).  Here, the Court finds

-13-

that the statements and imagery are neither "exaggerated, blustering and boasting" nor a "general claim of superiority over comparable products." *Pizza Hut*, 227 F.3d at 4497, 498.  By way of comparison, the Fifth Circuit cited to several examples of puffery in *Pizza Hut*, including the phrase, "[t]he Best Beer in America"; a manufacturer's slogan that its product was "the most advanced home gaming system in the universe"; and a claim that an ice cream maker was "better" than competition ice cream makers.  *Id.* at 498 (collecting cases).  The statements and imagery in the Advertisement include historic military footage, a claim that something is "military grade," and a suggestion that company's 70 years of heritage is connected to the U.S. military; the Court declines to equate such historical implications to vague phrases which are "nothing more than a mere expression of opinion."  *Id.*  Accordingly, the Court finds that the statements and imagery in the Advertisement are actionable under the Lanham Act.  The Court will thus proceed to examine the first element in Defendant's counterclaims.

### a. Literally False

A plaintiff may prevail on a false advertising claim by showing that the defendant's advertisement communicated a "literally false" message to consumers. "Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers." *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d

606, 614 (6th Cir. 1999) (citations omitted).  A literally false statement may be either explicit or "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 735–36 (6th Cir. 2012) (citation omitted).  Actual deception is presumed when a plaintiff relies on statements that are literally false.  *Id.* (citation omitted).

Here, Defendant claims that the statements and imagery in the Advertisement strongly convey "the false message that the Roxor vehicle has a history, association, or affiliation with the U.S. military, when in fact, no history, affiliation, or association with any military exists."  ECF No. 435, PageID.43726–27.  Plaintiffs correctly emphasize that only an "unambiguously" deceptive message can be literally false.  ECF No. 441, PageID.44342–43 (citing *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018)).  The Court finds that a reasonable consumer could interpret the Advertisement in a variety of ways, including one that the Roxor vehicle has been used by the U.S. military.[2]  The Advertisement is thus not an unambiguous message.

---

[2] Appendix D of the Poret survey indicates consumers' various responses, including that the Advertisement (1) encourages individuals to "get outdoors, get rugged with an off-road vehicle"; (2) that individuals should "get out into nature and enjoy the trails …."; and (3) that the Roxor "can take you camping, in rivers, on land, in a fast or slow view."  ECF No. 441-2, PageID.44352.  Additionally, the Poret survey indicates that a total of 46.3% of respondents believed that the Roxor has been used by the military or has a military history/heritage.  ECF No. 417-8, PageID.42827.

Accordingly, the Court agrees with Plaintiffs and concludes that Defendant's literal-falsity argument fails.  Defendant must therefore prove Plaintiffs' messaging was "misleading," as well as materiality and causation.  *Am. Council*, 185 F.3d at 614.

### b.  Implicitly False

A plaintiff may alternatively prevail on a false advertising claim by showing that a defendant's messaging was "misleading," even if not literally false.  *Am. Council*, 185 F.3d at 614.  The Sixth Circuit has set forth a more lenient standard for a plaintiff seeking to obtain injunctive relief under the Lanham Act for misleading advertising that is not literally false.  *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 690 (6th Cir. 2000).  Regarding deception, which is required when statements are misleading,[3] "injunctive relief may be obtained by showing only that the defendant's representations about its product have a tendency to deceive consumers…."  *Am. Council*, 185 F.3d at 618 (citations omitted).  By

---

While another district court outside of the Sixth Circuit has indicated that "[a] determination of literal falsity rests on an analysis of the message in context, not on … survey evidence of what consumers may believe the message to mean," *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 416 (E.D. Pa. 2016), the Court finds that the Poret survey at least indicates that the Advertisement is susceptible to more than one interpretation and therefore is not an unambiguous message.

[3] "A plaintiff relying upon statements that are literally true yet misleading cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react."  *Am. Council*, 185 F.3d at 614 (internal citation and quotation marks omitted).

contrast, parties seeking to recover monetary damages, which is not the case here, must show proof of actual consumer deception. *Id.* at 614 (citations omitted). "This lower standard has arisen because when an injunction is sought, courts may protect the consumer without fear of bestowing an undeserved windfall on the plaintiff." *Balance Dynamics Corp.*, 204 F.3d at 690 (citation omitted).

Here, Defendant argues that there is sufficient evidence from which a reasonable factfinder could conclude that the Advertisement is misleading and has a tendency to deceive consumers. ECF No. 435, PageID.43725. The Court agrees. Defendant has put forth evidence—specifically, the Poret survey—to meet the Sixth Circuit's more lenient standard for injunctive relief. Based on his summary of key findings, Poret concluded that the Advertisement "communicates to a high percentage of consumers that the [Roxor] has been used by or has an affiliation or association with the United States military." ECF No. 417-8, PageID.42827–28. Poret determined that 46.3% of the Test Group, when asked about the Advertisement's main messages; reasons to purchase the Roxor; history/heritage of the Roxor; and any association or affiliations, answered that the Roxor was "used by the military or has a military history/heritage." *Id.* at PageID.42827. Moreover, in the survey's final closed-ended questions, 79.7% of the Test Group answered that the Roxor was connected to the military. *Id.* When these respondents were asked what they think the connection is between the Roxor and the military, 92% provided

an answer that indicated they understood the connection "to be use for military/army/war/combat." *Id.* at PageID.42855.

Moreover, the Court takes notice of Perot's deposition for additional evidence that the Advertisement is misleading and has a tendency to deceive consumers. Perot testified that approximately 30% of respondents "gave an answer [concerning the explicit mention of use in the military] that is pretty explicitly along the lines" of suggesting that the Roxor was used in the military. ECF No. 435-10, PageID.43879. Some of the open-ended answers to the Perot survey's questions included:

- [Regarding Question 230: What was the main message or message of the commercial we showed you?] Roxor is a new off road vehicle that has a long history of *being used in the military*.

- [Regarding Question 240: What reasons, if any, did the commercial give for choosing to purchase the advertised vehicle?] *Military use* in World War Two; theyve [sic] been *used in the military* for years.

- [Regarding Question 260: What did the commercial say or show relating to the history or heritage of the advertised vehicle?] It showed *pictures of it working in the military* from many years ago; *Used by our military* in the 2nd world war [sic]; That the *military used this brand* for its jeeps.

ECF No. 435-11, PageID.43886 (emphasis in original).

The Court finds that this evidence is sufficient to raise a genuine issue of material fact as to the likelihood of consumer deception to survive summary judgment.    In making this conclusion, the Court finds Plaintiffs' argument concerning the Poret survey—specifically that Poret "did not test whether consumers were actually deceived or mislead by the Advertisement"—unavailing.  *See* ECF No. 417, PageID.42744.  Indeed, Poret testified that while it seemed "clear" to him "that a lot of [the survey] answers are misled," regarding the Roxor and whether it was used by the military, he knew "ultimately somebody else has to determine those facts."  ECF No. 417-9, PageID.42886.  He explained that he was not offering an opinion as to the underlying facts that are necessary to determine whether people are misled from the Advertisement.  *Id.* at PageID.42885.

Accordingly, the first and second elements are satisfied.

## 2.  Materiality of Statements (Element Three)

The third element of a false advertising claim under the Lanham Act is whether the allegedly misleading statements were material.  *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)).   "Materiality is defined in terms of a statement's propensity to have some effect on consumers' purchasing decisions."  *La-Pac. Corp. v. James Hardie Bldg. Prods. Inc.*, No. 3:18-cv-00447, 2018 WL 7272047, at *7 (M.D. Tenn. Dec. 20, 2018).  For the reasons discussed below, the Court concludes

that Defendant has put forth sufficient evidence to create a genuine issue of disputed fact as to the materiality of the contested statements and imagery in the Advertisement to consumers' purchasing decisions.

The parties dispute whether the Advertisement's claim of "military grade" concerns "an inherent quality or characteristic" and thus creates an issue of fact on materiality. Defendant argues that "the false or misleading statements made [in the Advertisement] are likely to—and in fact were intended to—influence consumer purchasing decisions." ECF No. 435, PageID.43735. Plaintiffs contend that because Defendant asserts that the "military grade" phrase suggests a "connection" between the U.S. military and the Roxor, it is not "an inherent quality or characteristic." ECF No. 441, PageID.44346. Moreover, Plaintiffs emphasizes that Defendant does not dispute that the Advertisement's "clip and reference to 'military grade grit' comprise a *de minimis* portion" of the Advertisement. *Id.*

"Evidence that a statement concerned an inherent quality or characteristic of a product is evidence of a likely influence on purchasing decisions." *A.L.S. Enterprises, Inc. v. Robinson Outdoor Prods., LLC*, No. 1:14-cv-500, 2017 WL 393307, at *6 (W.D. Mich. Jan. 30, 2017) (collecting cases); *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) ("A plaintiff may establish this materiality requirement by proving that the defendants misrepresented an inherited quality or characteristic of the product.")

(internal citation and quotation marks omitted).  Here, a rational trier of fact could conclude that the disputed issues relate to the inherent quality of the Roxor. Defendant argues that the Advertisement falsely "suggests that the Roxor meets the specifications of the U.S. [m]ilitary, and by harkening back to historic Jeep® vehicles, that the Roxor shares the military-grade specifications of the 'Willys Jeep®,' when it in fact does not."  ECF No. 435, PageID.43718.  When Richard Ansell of Mahindra was asked about the "military grade on the Roxor," he explained that the vehicle "hasn't changed much over the 70 years we've been making them, and they've been in multiple military conflicts over those years, and so that's what that's meant to convey."  ECF No. 435-2, PageID.43785.

Importantly, when Ansell was asked about Plaintiffs' marketing efforts with respect to the Roxor, he explained that they "have tried to build general brand awareness of what the Roxor is all about, as well as awareness as to who Mahindra is, to a certain extent, which includes referencing the Roxor's heritage as well as its product features."  ECF No. 435-3, PageID.43802.  During his deposition, Ansell testified that he's always found Plaintiffs' heritage, which includes an association with the Willys heritage, is "an important part of our heritage story."  ECF No. 435-2, PageID.4375.  He also explained that it "would have been a plus" for consumers to take notice of Plaintiffs' "shared heritage" with Jeep's heritage.  *Id.* at PageID.43763.  The Court also takes notice of Jeffrey Brunson's deposition, in

which he testified that Plaintiffs' "history of producing reliable vehicles that are durable and used in the military off-road is advantageous … to the story." ECF No. 435-15, PageID.44041.

The Court finds Plaintiffs' argument regarding the importance of the Advertisement's length unavailing. ECF No. 417, PageID.42747; ECF No. 441, PageID.4436. Plaintiffs do not point to any Sixth Circuit decisions to support the proposition that the "military grade grit" comprises a *de minimis* portion of the Advertisement and therefore cannot establish materiality. When evaluating this factor, courts should determine whether sufficient evidence establishes that the challenged statements "have some effect on consumers' purchasing decisions." *La-Pac. Corp. v. James Hardie Bldg. Prods. Inc.*, No. 3:18-cv-00447, 2018 WL 7272047, at *7 (M.D. Tenn. Dec. 20, 2018) (citation omitted). Defendant has pointed to several instances where Plaintiffs considered the advantages of including reference to the military grade, which concern the relevant consumer market. Indeed, "[w]hen a court assesses materiality, the relevant perspective is that of the consumers." *Fed. Express Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943, 953 (W.D. Tenn. 1999). The Court thus finds that Defendant has presented sufficient evidence to create a genuine issue of disputed fact as to materiality.

In sum, the aforementioned evidence demonstrates that the statements and imagery in the Advertisement had the propensity to have some effect on consumers'

purchasing decision.  Summary judgment is therefore unwarranted on the issue of materiality.

Accordingly, the third element is also satisfied.

### 3.  Causal Link (Element Five)

The fifth element pertains to a plaintiff's injury under the Lanham Act.  This injury element asks "whether the defendant's deception of the consumer caused harm to the plaintiff."  *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613–14 (6th Cir. 1999).  This element is separate from the third "deception" element; however, these two elements "are both components of causation generally."  *Id.* at 613.  The level of proof a claimant must show for this element varies depending upon whether actual damages or injunctive relief is sought.  *Id.* at 614.  Defendant no longer seeks actual damages for its false advertising claim; it "seeks only a disgorgement of profits and permanent injunction."  ECF No. 435, PageID.43735.  Accordingly, Defendant is not required to quantify its damages in order to obtain injunctive relief.  Rather, "logical likelihood of damages is sufficient."  *La-Pac. Corp. v. James Hardie Bldg. Prods. Inc.*, No. 3:18-cv-00447, 2018 WL 7272047, at *8 (M.D. Tenn. Dec. 20, 2018); *see also Iams Co. v. Nutro Prods.*, No. 3:00-cv-566, 2004 U.S. Dist. LEXIS 15134, at *18 (S.D. Ohio Jul. 3, 2004) (finding that admissible evidence to show a likelihood of injury was sufficient for injunctive relief).

Defendant argues that the Advertisement is likely to cause harm, specifically "causing it to lose singular control over its brand image and diluting the distinctiveness of the brand, rendering its marketing messaging less effective and causing it to have to spend more to communicate effectively."  ECF No. 435, PageID.43737.  In support of its argument, Defendant points to Scott Tallon's direct witness statement before the ITC.  ECF No. 435-17.  Tallon explains that Plaintiffs try to claim Defendant's heritage in the Advertisement.  *Id.* at PageID.44066. "[Plaintiffs] are trying to leverage the Jeep® DNA just as we plan to.  And based on my own experience, it appears [Plaintiffs are] targeting people who are interested in the Jeep® brand."  *Id.*  In his statement, Tallon also specifically discussed the significance of the Advertisement's "images that harken to the Jeep® brand heritage that U.S. consumers know about and that we have long promoted in our advertising." *Id.*

Defendant also cites to Gregory S. Carpenter's direct witness statement before the ITC.  ECF No. 435-19.  Carpenter asserted that because "consumers associate Roxor with the Jeep brand, harm is inevitable."  *Id.* at PageID.44086.  While Plaintiff is correct to point out that this expert testimony concerns the alleged harm from the Roxor generally, ECF No. 441, PageID.44347, the Court finds that Defendant's presented evidence concerning the Advertisement, specifically the Poret survey, is sufficient to demonstrate the requisite causation of harm.  Indeed, the findings in the

Poret survey, discussed *supra*, support Tallon's emphasis on the imagery in the Advertisement and its connection to Defendant's heritage.  For example, 37.0% of respondents believed that the Advertisement's message pertains to the U.S. military.  ECF No. 417-8, PageID.42827.  The Court finds that this evidence, which must be viewed in the light most favorable to Defendant in this Motion, creates a dispute of fact as to whether it is harmed by the Advertisement.

In making this finding, the Court also agrees with Defendant that its requested injunctive relief is not moot.[4]  ECF No. 435, PageID.43737.  Defendant emphasizes that its false advertising claim is based on the alleged false and misleading statements and imagery regarding the affiliation of the Roxor with the U.S. military, not on the infringing Roxor trade dress.  *Id.*  It also clarifies that the ITC's Orders "only prevent [Plaintiffs] from selling and advertising a confusingly similar *vehicle*," and not "such false and misleading claims and imagery."  *Id.* (emphasis in original).

The Supreme Court has explained that a "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.  Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

---

[4] Plaintiffs did not address their original argument, ECF No. 417, PageID.42748–49, in their Reply.

Moreover, the Supreme Court has established a "burden of showing" that a defendant must bear in order to establish its voluntary compliance moots a case or claim.  *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.,* 528 U.S. 167, 190, (2000).  Plaintiffs do not make such a showing here.

Accordingly, the fifth element of a false advertising claim under the Lanham Act is also satisfied.  In sum, the Court finds that the presented evidence, when viewed in the light most favorable to Defendant, establishes a genuine dispute of material fact as Defendant's false advertising counterclaims (Counts VII and IX). Summary judgment in favor of Plaintiffs is thus unwarranted.

## IV. CONCLUSION

For the reasons articulated above, Plaintiffs' Motion for Summary Judgment [#417] is **DENIED**.

**IT IS SO ORDERED.**

Dated:          February 1, 2021

<u>s/Gershwin A. Drain</u>
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 1, 2021, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager