UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAHINDRA & MAHINDRA LTD. AND
MAHINDRA AUTOMOTIVE NORTH
AMERICA, INC.,

Plaintiffs / Counterclaim
Defendants,

v.

FCA US LLC,

Defendant / Counterclaim
Plaintiff.

Case No. 18-cv-12645

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PERMANENT INJUNCTION [#424, 425] AND DENYING DEFENDANT'S MOTION TO ENJOIN POST-2020 ROXOR DESIGN IN ACCORDANCE WITH SAFE DISTANCE RULE [#446, 447]

### I. INTRODUCTION

On August 23, 2018, Plaintiffs Mahindra & Mahindra Ltd. and Mahindra Automotive North America, Inc. ("Mahindra") filed the instant action against Defendant FCA US LLC's ("FCA"). ECF No. 1. On November 8, 2018, FCA counterclaimed with, among other claims, false-advertising claims which could not be adjudicated before the International Trade Commission ("ITC"). ECF No. 47.

Presently before the Court are FCA's Motion for Permanent Injunction[1] (ECF Nos. 424, 425) and Motion to Enjoin Post-2020 Roxor Design in Accordance with the Safe Distance Rule[2] (ECF Nos. 446, 447). These two Motions are fully briefed. A hearing on this matter was held on May 13, 2021.[3] For the reasons that follow, the Court will **GRANT** FCA's Motion for Permanent Injunction [#424, 425]. Further, the Court will **DENY** FCA's Motion to Enjoin Post-2020 Roxor Design in Accordance with the Safe Distance Rule [#446, 447].

## II. BACKGROUND

### A. Early Proceedings in this Court

This case involves a trademark dispute. Mahindra & Mahindra Ltd. ("M&M") entered into an agreement with FCA[4] in 2009 ("2009 Agreement") for a grille design on vehicles that did not infringe on FCA's Jeep brand grille design. ECF No. 1, PageID.1–2. Mahindra Automotive North America, Inc. ("MANA")

---

[1] The Court will cite to FCA's sealed Motion for Permanent Injunction (ECF No. 425) for the remainder of this Opinion.

[2] The Court will cite to FCA's sealed Motion to Enjoin Post-2020 Roxor Design in Accordance with the Safe Distance Rule (ECF No. 447) for the remainder of this Opinion.

[3] The Court previously adjourned a hearing on FCA's Motion for Permanent Injunction after granting FCA's Motion to Adjourn February 22, 2021 Hearing and Conduct Joint Hearing on FCA US's Motion for Permanent Injunction (ECF No. 424) and FCA US's Related Motion for Injunction Pursuant to the Safe Distance Rule (ECF No. 446) on February 19, 2021. ECF No. 454.

[4] Mahindra entered into an agreement with Chrysler Group LLC, which Defendant FCA US LLC eventually took over. ECF No. 1, PageID.5.

then implemented this design in an off-road-only vehicle. *Id.* In 2015, MANA designed and manufactured an off-road-only vehicle for sale in the United States, named the Roxor. *Id.* at PageID.8. Mahindra alleges that the Roxor incorporates the "Approved Grille Design," which M&M and FCA allegedly agreed to in their 2009 contract negotiations. *Id.*

On August 1, 2018, FCA filed a complaint with the ITC against Mahindra, alleging that the Roxor vehicle infringes its Jeep-related intellectual property. *See* ECF No. 1-3. Mahindra then filed its Complaint and Motion for Preliminary Injunction in this Court on August 23, 2018. ECF Nos. 1, 3. FCA answered and brought counterclaims asserting trademark and trade-dress infringement claims similar to those it asserted before the ITC, as well as a false-advertising claim. ECF No. 47. As relevant for the present Motions, FCA brought claims for infringement and dilution of trade dress in the Jeep CJ and Wrangler vehicles, including:

> the overall exterior appearance and styling of the vehicle design, including a boxy body shape with flat appearing vertical side and rear body panels ending at about the same height as the hood, substantially flat hood with curved side edges that tapers to be narrower at the front, trapezoidal front wheel wells with front fenders or fender flares that extend beyond the front of the grille, a flat appearing grille with vertical elongated grille slots and a trapezoidal outline that curves around round headlamps positioned on the upper part of the grille (the "Infringing Grille"), exterior hood latches, and door cutouts above a bottom portion of the side body panels.

*Id.* at PageID.1094.

### B. ITC Proceedings and Determinations

The ITC proceedings were divided into two phases. ECF No. 400, PageID.42211. First, the ITC conducted an initial "100-day proceeding" to determine whether the parties' 2009 Agreement barred Defendant's suit. *Id.* Following a two-day evidentiary hearing, the ITC concluded that (1) the 2009 Agreement was not ambiguous, ECF No. 55-1, PageID.1404; (2) the Roxor grille did not embody the Approved Grille Design shown in Exhibit A of the 2009 Agreement, ECF No. 55-1, PageID.1410; and (3) FCA's claims in its suit were not implicated by the 2009 Agreement, ECF No. 55-1, PagID.1410. Upon Mahindra's petition to the full Commission, the ITC concluded that the ALJ's determination was "the determination of the Commission" itself. *See* ECF No. 60-1.

Second, the ITC conducted an evidentiary hearing on the merits, which included five days of testimony and argument, as well as two rounds of post-hearing briefing. ECF No. 400, PageID.42212. On November 8, 2019, the ITC issued its Initial Determination. *See* ECF No. 400-2.

The parties subsequently filed petitions seeking review of certain findings pursuant to 19 C.F.R. § 210.43. ECF No. 400, PageID.42212; ECF No. 409, PageID.42617. Mahindra sought review of the findings on functionality, genericism, secondary meaning, and infringement of the Asserted Jeep Trade Dress. ECF No. 409, PageID.42617. FCA sought review of the finding of non-infringement of the Registered Grille Mark. *Id.* FCA did not petition for review of its losses on

claims for infringement of the '873 Mark or dilution of the '873 Mark, Registered Grille Marks, and unregistered Asserted Jeep Trade Dress. *Id.*

On June 11, 2020, the Commission issued its Final Determination. *See* ECF No. 397-1. As relevant for the present Motions, the Commission concluded that the 2018-2019 ROXOR vehicle (hereinafter, "Roxor") infringes FCA's Jeep Trade Dress. ECF No. 397-1. The sixty-day Presidential Review Period ("PRP"), during which the President or his delegate, the U.S. Trade Representative, has plenary authority to disapprove of the ITC's determination and orders, concluded on August 11, 2020. ECF No. 409, PageID.42618.

Following its Final Determination, the ITC issued a limited exclusion order and cease and desist orders. ECF No. 424-7. These orders enjoined Mahindra from importing and selling after importation vehicle and components "that infringe the Jeep Trade Dress or any trade dress confusingly similar thereto or that are otherwise misleading as to source, origin, or sponsorship." *Id.* at PageID.43163, 43164, 43172, 43173.

Mahindra subsequently petitioned for an expedited determination (hereinafter, "Modification Proceedings"), that the Post-2020 Roxor, which is at issue in the present Motions, did not infringe the Jeep Trade Dress and should be explicitly exempt from the ITC's remedial orders. ECF No. 439, PageID.44277. In its opposition, FCA argued that the safe distance rule applied. ECF No. 451,

PageID.44972.  According to MANA's CEO Richard Haas, Plaintiffs launched the Post-2020 Roxor in January 2020 "to eliminate any question of a possible relationship between Mahindra and FCA."  ECF No. 446-5, PageID.44496.  FCA maintains that the Post-2020 Roxor is "nearly identical" to the infringing 2018-2019 Roxor.  ECF No. 447, PageID.44687–88.

After three months of written discovery, document production, fact and expert witness depositions, and a detailed evidentiary record, the ALJ determined that Mahindra established that there is no likelihood of consumer confusion as to origin, sponsorship, or approval of the Post-2020 Roxor.  ECF No. 437-3, PageID.44191.  The ALJ therefore recommended that the limited exclusion order and cease and desist orders be modified so as to not apply to the Post-2020 Roxor.  *Id.*  FCA subsequently filed its objections to the ALJ's finding.

On December 23, 2020, the ITC issued its Commission Order adopting the ALJ's recommendation.[5]  ECF No. 443-1.  In the Order, the ITC affirmed that the redesigned Post-2020 Roxor is non-infringing.  Moreover, the ITC concluded that the Post-2020 Roxor cannot infringe as a matter of law because it is not substantially similar to FCA's Asserted Jeep Trade Dress.  The Commission Order also modified

---

[5] Mahindra submitted the ITC's Commission Order as Exhibit A to their January 7, 2021 Notice of Supplemental Authority in Support of Plaintiff's Opposition to Defendant's Motion for Permanent Injunction.  ECF No. 443-1.

the limited exclusion order and cease and desist orders to include an exemption with respect to the Post-2020 Roxor. *Id.* at PageID.44383.

In its Opinion to accompany the December 23, 2020 Commission Order, the ITC explained that the ALJ "reasonably declined" to apply the "safe distance rule" in determining whether the Post-2020 Roxor vehicle infringes the Jeep Trade Dress.[6] ECF No. 444-1, PageID.44401. As relevant for the present Motions, the ITC opined:

> Under the Commission's practice and precedent, petitioners bear the burden to establish non-infringement in a modification proceeding, and the test for infringement itself is not altered by the "safe distance rule." First, the "safe distance rule" is an equitable principle that allows courts "to craft permanent injunctions tailored to the needs of each case." *See*, *e.g.*, *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 F.3d 524, 544-45 (6th Cir. 2014); *see also Certain Plastic Food Storage Containers*, 0084 WL 951885, at *8 (considering safe distance rule in determining the scope of an effective remedy for the violation found). Second, the Commission's discussion of the safe distance rule in those investigations cited by Complainant did not alter the test for infringement or likelihood of confusion in any way. *See Certain Plastic Food Storage Containers*, 0084 WL 951885, at *8; *Certain Cube Puzzles*, 1982 WL 974906, at *11 n.88; *accord* Respondents' Resp. at 40; IA's Resp. at 18.

*Id.* at PageID.44401–02. The ITC then reviewed each of the challenged *DuPont* factors (factors 1, 5, 7, and 13), as well as the evidence as to all other *DuPont* factors for the Federal Circuit's likelihood of confusion test. *Id.* at PageID.44402–13. As

---

[6] Defendant submitted the ITC's Commission Opinion as Exhibit A to its January 27, 2021 Response to Plaintiff's Notice of Supplemental Authority Regarding Motion for Permanent Injunction. ECF No. 444-1. In this Response, Defendant informed the Court that it intended to address the Post-2020 Roxor in the context of the safe distance rule by separate motion. ECF No. 444, PageID.44388.

indicated *supra*, the ITC adopted the ALJ's finding that the overall appearance of the Post-2020 Roxor is not substantially similar with respect to FCA's asserted trade dress. *Id.* at PageID.44413.

### C. Recent Proceedings in this Court

On October 8, 2020, the Court entered an Opinion and Order granting both FCA's Motion for Summary Judgment and Mahindra's Cross-Motion for Summary Judgment. ECF No. 416. The Court applied the doctrines of claim preclusion and issue preclusion to the ITC's findings related to the 2018-2019 Roxor. Accordingly, Counts I and IV, as it related to trade-dress infringement, of Mahindra's Complaint were dismissed with prejudice. FCA's Counterclaim Count I was also granted in its favor. Moreover, Count IV of Mahindra's Complaint, as it related to infringement of U.S. Trademark Registration Nos. 4,272,873; 2,862,487; 2,161,779; 2,794,553 and 4,043,984; and FCA's Counterclaim Counts II, III, IV, as it related to infringement of U.S. Trademark Registration Nos. 4,272,873; 2,862,487; 2,161,779; 2,794,553 and 4,043,984, V, and VI were dismissed with prejudice. In its Opinion and Order, the Court emphasized that the findings only applied to the 2018-2019 Roxor, as the discovery and trial before the ITC only involved this specific model. *Id.* at PageID.42712 n.7.

On February 1, 2021, the Court entered a separate Opinion and Order denying Mahindra's Motion for Summary Judgment. ECF No. 448. The Court concluded

that the presented evidence as to FCA's false advertising counterclaims (Counts VII and IX), when viewed in the light most favorable to FCA, established a genuine dispute of material fact. *Id.* at PageID.44932. Summary judgment in favor of Mahindra was therefore unwarranted. *Id.* These two counterclaims are based on Mahindra's commercial for the 2018-2019 Roxor, which featured the vehicles of various colors driving on unpaved mountain trails, along with various images of individuals camping, hiking and chain-sawing logs. *Id.* at PageID.44913. The commercial also included various military imagery and references. *Id.* at PageID.43717.

### D. Defendant's Present Motions

First, in its Motion for Permanent Injunction, FCA argues that the injunction "should cover not only the specific 2018-2019 Roxor vehicle that has been adjudicated infringing in this Court's summary judgment order, but all other designs that are 'confusingly similar' to the Jeep Trade Dress." ECF No. 425, PageID.43316. Defendant asserts that such language is necessary to accord effective relief. *Id.* at PageID.43317. In its first proposed injunction, FCA seeks relief as to "the Adjudicated Roxor vehicle or any other products that use, display, or incorporate FCA's Jeep Trade Dress or any trade dress confusingly similar thereto …." ECF No. 424-1, PageID.43114–15.

In their Response, Mahindra explains that while it agrees that FCA is entitled to injunctive relief, it disputes whether the post-2020 Roxor should be included within the scope of the injunction. ECF No. 439. Mahindra emphasizes that the ITC's findings were limited to the 2018-2019 Roxor. *Id.* at PageID.44275. It argues that the Court should therefore deny FCA's "overreaching Motion for [Permanent Injunction] and enter an injunction appropriately limited to the 2018-2019 Roxor." *Id.* at PageID.44275. According to Mahindra, FCA is not entitled to the broad injunction it seeks under the factors set forth in *eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388 (2006). FCA timely filed a Reply. ECF No. 442. At the time of briefing, proceedings on the Post-2020 Roxor were underway at the ITC. ECF No. 449, PageID.44934.

Second, in its Motion to Enjoin Post-2020 Roxor Design in Accordance with the Safe Distance Rule (hereinafter, "Motion to Enjoin"), FCA moves for a permanent injunction that expressly includes reference to the Post-2020 Roxor based on the Safe Distance Rule. ECF No. 447. This issue was not briefed in Defendant's Motion for Permanent Injunction, *see supra*, nor was it considered by the ITC in its recent Modification Proceedings, ECF No. 446-5, PageID.4484–86. In its Motion to Enjoin, FCA argues that Mahindra's Post-2020 Roxor fails to keep a safe distance from the Jeep Trade Dress "because it carries over many design features from the infringing Roxor, thereby retaining Jeep Trade Dress and misappropriated brand

goodwill." *Id.* at PageID.44684. FCA emphasizes that a credited consumer survey before the ITC found that 19% of respondents believed that there was an association between the Post-2020 Roxor and the Jeep brand. *Id.* at PageID.44685. In its proposed injunction, FCA thus seeks relief as to (a) "the 2018-2019 Roxor vehicle … or any other products that use, display, or incorporate FCA's Jeep Trade Dress or any trade dress confusingly similar thereto"; and (b) "[i]n particular … the Post-2020 Roxor vehicle." ECF No. 446-2, PageID.44470.

In its Response, Mahindra argues that FCA's Motion to Enjoin is barred by claim preclusion and issue preclusion. ECF No. 451, PageID.44967. It emphasizes the ITC's findings that the Post-2020 Roxor is not substantially similar to and presents no likelihood of confusion with the Jeep Trade Dress. *Id.* Moreover, Mahindra contends that the safe distance rule does not apply to this case, as it has not been accused of contempt or of violating any existing injunction. *Id.* at PageID.451. Lastly, Mahindra argues that even if the Court determined that the safe distance rule applies here, the ITC's preclusive factual findings related to the Post-2020 Roxor's design establish that it is a safe distance away from FCA's Jeep Trade Dress. *Id.* at PageID.44986-87. FCA timely filed a Reply.

### III. LAW & ANALYSIS

### A. FCA's Motion for Permanent Injunction (ECF Nos. 424, 425)

### 1. Applicable Law

When presiding over trademark infringement actions, the Lanham Act grants federal courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 116(a); *see also Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991). The Sixth Circuit has explained that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Audi AG v. D'Amato*, 469 F.3d 534, 550–51 (6th Cir. 2006) (citations omitted) (alteration in original). "In a trademark case, a court determines the scope of an injunction depending upon: the manner in which the plaintiff is harmed, the ways in which the harm can be avoided, the viability of the defendant's defenses, the burden that would be placed on the defendant and the potential effect upon lawful competition between the parties." *ProNational Ins. Co. v. Bagetta*, 347 F. Supp. 2d 469, 472 (E.D. Mich. 2004) (citations omitted).

Generally, a party seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) there is no adequate remedy at law; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public's interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The decision whether to grant injunctive relief falls within the district court's

discretion.  *Id.*  If injunctive relief is granted, the district court must "closely tailor injunctions to the harm that they address."  *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) (internal quotation marks and citation omitted).

## 2. Analysis

As indicated *supra*, FCA initially moved for a permanent injunction, ECF Nos. 424, 425, after the Court granted its Motion for Summary Judgment on its trade dress infringement claims, ECF No. 416.  Importantly, the Court emphasized that its ruling concerned "only the 2018-2019 Roxor vehicle."  ECF No. 416, PageID.42712, 42720.  Mahindra now agrees to a narrow injunction covering only the 2018-2019 Roxor, emphasizing that this Court and the ITC limited its findings to this specific vehicle design.  ECF No. 439, PageID.44280, 44292.  In its Reply, FCA argues that there is no basis to carve out the Post-2020 redesign from the injunction.  ECF No. 442, PageID.44372.  FCA asserts, "[a]fter the ITC proceedings are completed and if Mahindra takes steps toward selling the Post-2020 Roxor, this Court can address that redesign under the appropriate Sixth Circuit law.  There is no basis—nor any evidentiary record—for this Court to do so now."  ECF No. 442, PageID.44373–74.  At the time of the parties' present briefing, the Modification Proceedings were ongoing before the ITC.  On December 23, 2020, the ITC issued its Opinion and Order.  ECF Nos. 443-1, 444-1.

At the hearing on this Motion, the parties agreed to stipulate to a permanent injunction regarding the 2018-2019 Roxor. This renders the parties' arguments as to the specific language to be included in the injunction moot. Accordingly, the Court will grant FCA's request for permanent injunctive relief in its present Motion. Out of an abundance of caution, the Court will briefly address the four *eBay* factors below. The Court finds that all four factors weigh in favor of issuing an injunction in this matter.

First, the Court has determined, by giving the ITC's findings preclusive effect, that the 2018-2019 Roxor infringes FCA's Jeep Trade Dress. ECF No. 416. FCA has therefore demonstrated that it will suffer irreparable harm absent a permanent injunction. *See DamilerChrysler v. The Net Inc.*, 388 F.3d 201, 208 (6th Cir. 2004); *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999) ("[A] court need only find that a defendant is liable for infringement or unfair competition for it to award injunctive relief.").

As to the second factor, FCA argues that even if Mahindra has redesigned the infringing vehicle, injunctive relief remains appropriate. ECF No. 425, PageID.43311. While it is true that Mahindra has discontinued its use of the 2018-2019 Roxor, ECF No. 439, PageID.44293, the Court finds that the second *eBay* factor still weighs in favor of FCA at the present time. As another court within this District has explained, "[t]he potential for future harm from further infringing is also

a basis to find that remedies at law are inadequate to compensate the moving party."

*Lucky's Detroit, LLC v. Double L Inc.*, No. 09-14622, 2012 WL 1658455, at *3 (E.D. Mich. May 11, 2012) (finding that the second *eBay* factor weighed in defendant's favor despite plaintiff's assertion that it was in the process of identifying a new mark and discontinuing the use of a mark found to be confusingly similar to defendant's mark); *see also Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 701 (W.D. Ky. 2010) (concluding that injunctive relief was appropriate even though defendant voluntarily abated the trade mark's use). In sum, the Court finds that equity supports injunctive relief and that such relief is necessary to prevent future harm to FCA.

The third factor also weighs in FCA's favor. In its Motion, FCA emphasizes that it may lose goodwill and suffer continued harm to its Jeep brand in which it has significantly invested over several decades. ECF No. 425, PageID.43313. The Court agrees. Indeed, several courts in this District have concluded that the balance of hardship favors an injunction because any hardship experienced by the infringing party is the result of complying with applicable federal laws. *Lucky's Detroit, LLC*, No. 09-14622, 2012 WL 1658455, at *3; *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-cv-10983, 2013 WL 2145677, at *1 (E.D. Mich. May 15, 2013), *aff'd*, 763 F.3d 524 (6th Cir. 2014); *see also Audi AG v. D'Amato*, 469 F.3d 524, 550 (6th

Cir. 2006) (finding injunctive relief is warranted where defendant faced "no hardship in refraining from willful trademark infringement").

As to the final factor, the public interest is served when the Court prevents customer confusion. *Audi AG*, 469 F.3d at 550. Given that the Court has already determined that Mahindra has infringed FCA's intellectual property rights, the public interest is best served by ceasing the infringement. This fourth factor therefore weighs in FCA's favor.

The only remaining issue for the Court to resolve is whether the Court should enjoin Mahindra from marketing and selling its redesigned Post-2020 Roxor pursuant to the Safe Distance Rule. Accordingly, the Court will address the scope of FCA's injunctive relief in the next section.

### B. FCA's Motion to Enjoin Post-2020 Roxor Design in Accordance with the Safe Distance Rule (ECF Nos. 446, 447)

#### 1. Applicable Law

The Safe Distance Rule is an equitable principle utilized by courts in crafting permanent injunctions, as well as when enforcing such injunctions in contempt proceedings. *Innovation Ventures, LLC v. N2G Distrib. Inc.*, 763 F.3d 524, 544 (6th Cir. 2014). Specifically, the Safe Distance Rule "prevent[s] known infringers from using trademarks whose use by non-infringers would not necessarily be actionable." *Id.* (citations omitted). In its seminal case describing the Safe Distance Rule, *Innovation Ventures, LLC v. N2G Distrib. Inc.*, the Sixth Circuit opined:

> Once a party infringes on another's trademark or trade dress, the confusion sowed "is not magically remedied" by *de minimis* fixes. *Id.* at 779. "Instead, the confusion lingers, creating the need for the infringer not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Id.* In contempt proceedings, the Safe Distance Rule "reliev[es] the reviewing court of the need to retry the entire range of issues that may be relevant in an infringement action for each small variation the defendant makes to the enjoined mark." *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.,* 520 F.3d 109, 118 (2d Cir.2008). If the law were otherwise, an enjoined party "could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to use of the 'new' format." 5 McCarthy on Trademarks and Unfair Competition § 30:21 (4th ed.2013).

*Id.* There, the court emphasized that the Safe Distance Rule is "particularly apt" in a case "where a serial infringer has tinkered with products to skirt a permanent injunction for commercial gain." *Id.* at 545.

### 2. Analysis

Following the ITC's resolution of the Modification Proceedings, FCA filed its present Motion to Enjoin. As indicated *supra*, the parties dispute whether the Court shall expressly include reference to the Post-2020 Roxor pursuant to the Safe Distance Rule.

As an initial matter, the Court takes notice of the parties' arguments related to the doctrine of claim preclusion. ECF No. 451, PageID.44977–81; ECF No. 456, PageID.45152–54. Mahindra contends that FCA is barred from relitigating whether it can market or sell the Post-2020 Roxor since this matter "was already litigated and

decided at the ITC in Mahindra's favor based on the identical set of facts at issue" in FCA's present Motion. ECF No. 451, PageID.44977. In its Reply, FCA emphasizes that the ITC declined to apply the Safe Distance Rule in its Modification Proceeding. ECF No. 456, PageID.45153. According to FCA, this Court is presently tasked with addressing the Safe Distance Rule's applicability in the first instance in light of the ITC's decision to not apply it in the parties' Modification Proceedings. *Id.* at PageID.45154.

As this Court indicated in its October 8, 2020 Opinion and Order, ECF No. 416, PageID.42714–15, claim preclusion "serves to 'avoid multiple suits on identical entitlements or obligations between the same parties.'" *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 357 (2016) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402, p. 9 (2d ed. 2002)). To establish claim preclusion, there must be (1) "a final judgment on the merits" in a prior action; (2) "a subsequent suit between the same parties or their privies"; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same series of transactions. *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015). "When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated

to apply res judicata to enforce repose." *United States v. Utah Constr. Co.*, 384 U.S. 394, 422 (1966).

Contrary to Mahindra's argument, ECF No. 451, PageID.44978, the first requirement for claim preclusion is not met here. The Sixth Circuit has explained that a decision on the merits for claim preclusion purposes is "one that permanently forecloses a party from advancing a claim or defense." *Mitchell v. Chapman*, 343 F.3d 811, 822 (6th Cir. 2003). The ITC's opinion did not explicitly foreclose future litigation of FCA's argument related to the Safe Distance Rule. Rather, the ITC only determined that the ALJ "reasonably declined" to apply the Safe Distance Rule in determining whether the Post-2020 Roxor infringes the Jeep Trade Dress. ECF No. 446-5, PageID.4485. Indeed, the ITC acknowledged that it did not order a determination of compliance with the Safe Distance Rule in the Modification Proceedings. *Id.* at PageID.44485. In its brief discussion of the Safe Distance Rule, the ITC stated only that (1) it is an "equitable principle that allows courts to craft permanent injunctions tailored to the needs of each case," and (2) that it "did not alter the test for infringement or likelihood of confusion in any way" when discussed in prior investigations. *Id.* at PageID.44486 (internal quotation marks and citations omitted). The Court does not interpret this language as a final decision on the merits concerning whether the Post-2020 Roxor stays a safe distance from the Jeep Trade Dress. *Cf. Heike v. Cent. Mich. Univ. Bd. of Trustees*, 573 F. App'x 476, 480 (6th

Cir. 2014) (upholding the district court's decision to bar plaintiff's claims based on claim preclusion in light of the court's grant of summary judgment, which "most certainly constitutes a final adjudication on the merits"). Upon careful review of the Commission's opinion, the Court agrees with FCA to the extent that the ITC "did not reach the merits of the Safe Distance Rule." ECF No. 456, PageID.45152.

Given that there was no final decision on the merits related to the Safe Distance Rule in the first action, FCA's present argument is not barred by claim preclusion. This ends the Court's inquiry as to whether claim preclusion bars application of the Safe Distance Rule.[7] The Court will therefore proceed to the parties' remaining arguments on whether the Safe Distance Rule applies at this juncture.

In opposing FCA's requested relief in the present Motion, Mahindra emphasizes that it has not been accused of contempt or of violating any existing injunction. ECF No. 451, PageID.44981. It argues that the Safe Distance Rule is therefore improper at this juncture, where its redesigned product, which the ITC

---

[7] The Court also denotes that the Restatement (Second) of Judgments advises against the doctrine where "formal barriers existed against full presentation of a claim" in the first action. Restatement (Second) of Judgments § 26, Comment *c* (1982). Specifically, the Restatement explains that "it is unfair to preclude" a party from a second action when "such formal barriers" existed in the first action. *Id.* The Court interprets the ITC's decision, which expressly acknowledged the limits of the Modification Proceedings to not include an analysis on the compliance of the Safe Distance Rule, as one which consequently imposed a "barrier" against FCA's ability to pursue its arguments on the merits in the first action.

determined to be non-infringing, ECF No. 446-5, has not yet been distributed. *Id.* at PageID.44983. Mahindra distinguishes itself from the defendants in *Innovation Ventures*, who appealed a district court's contempt ruling that related to their modified versions of the previously enjoined products. *Innovation Ventures*, 763 F.3d at 543. There, the district court first issued a permanent injunction which prohibited defendants from selling six specific products determined to infringe plaintiff's trademark and trade dress. *Id.* at 532. The injunction also barred selling products that used "marks that are confusingly similar to" plaintiff's trademark and trade dress. *Id.* In light of defendants' post-injunction sales of enjoined products, which were distributed through a separate company controlled by defendants, plaintiff moved the district court to hold defendants in contempt of the permanent injunction. *Id.* at 533. The district court used the Safe Distance Rule to find that defendants' modified products were confusingly similar to plaintiff's trademark and trade dress and accordingly ruled in plaintiff's favor. *Id.* at 543–44. On appeal, the Sixth Circuit upheld the district court's contempt ruling, explaining that the district court "was within its rights to simply determine whether the modified products were confusingly similar to [plaintiff's trademark and trade dress]." *Id.* at 545 (citation omitted).

Here, Mahindra asserts that its actions, which include creating the Post-2020 Roxor design before any findings of infringement related to the 2018-2019 Roxor,

substantially contrast with the actions taken by other infringers in cases where the Safe Distance Rule has been applied.[8] In its Response, Mahindra highlights how it "affirmatively sought judicial modification" of the ITC's remedial orders enjoining the 2018-2019 Roxor, as well as approval of its Post-2020 Roxor redesign, before its attempts to launch the product into the market. ECF No. 451, PageID.44982. As indicated *supra*, the ALJ concluded, upon an extensive evidentiary record, that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress and that there is no likelihood of consumer confusion as to the product's origin, sponsorship, or approval. ECF No. 437-3, PageID.44191. On appeal, the ITC adopted the ALJ's finding that the Post-2020 Roxor is not substantially similar with respect to the Jeep Trade Dress. ECF No. 446-5, PageID.44497. The ITC concluded that the "redesigned Post-2020 Roxor vehicle does not infringe the Jeep Trade Dress and is not subject to the LEO and CDOs issued in the underling investigation." *Id.* Mahindra asserts that these findings are "the exact opposite of a contempt finding" as set forth in *Innovation Ventures*. ECF No. 451, PageID.44983.

Nevertheless, FCA contends that the Safe Distance Rule is appropriate at this juncture, "where the Jeep Trade Dress has been found to be extremely strong due to longtime use and extensive marketing." ECF No. 447, PageID.44692. Moreover,

---

[8] The Court will address such cases, which FCA cites to in its present Motion, ECF No. 447, PageID.44696–99, below.

FCA emphasizes in its Reply that the Safe Distance Rule is not limited to contempt proceedings; rather, the Court can employ this equitable principle when crafting the present permanent injunction. ECF No. 456, PageID.45154. FCA cites to *Innovation Ventures* to support this proposition. *Id.* at PageID.45154–55. As noted above, the Sixth Circuit explained that the Safe Distance Rule is "particularly useful" for courts in both "crafting and enforcing permanent injunctions" once a party infringes on another's trademark or trade dress. 763 F.3d at 544. FCA also cites to the Sixth Circuit's more recent opinion in *ECIMOS, LLC v. Carrier Corp.* to emphasize that a court, upon concluding that a defendant has infringed on a trademark, can craft such an equitable remedy to prohibit future infringement. 971 F.3d 616, 644 (6th Cir. 2020) (declining to expand the Safe Distance Rule from the trademark context to the presented claims for copyright infringement).

A number of courts, which FCA cites to in its present Motion, ECF No. 447, PageID.44696–99, have considered the Safe Distance Rule when determining an injunction's scope. For example, in *Kimberly Knitwear, Inc. v. Kimberley Stores Inc.*, 331 F. Supp. 1339 (W.D. Mich. 1971), the district court enjoined defendants from adopting the name "Kimleys," which defendants assumed during the pendency of the infringement action, after finding that its use of the name "Kimberley's" infringed upon the plaintiff's name "Kimberly." There, the court determined that defendants impermissibly "attempted to retain the goodwill they have appropriated

by the use of plaintiff's name, through the use of a name which, while perhaps not confusingly similar, is so reminiscent of the plaintiff's that it continues to accord the defendants some of the same unfair advantage they have previously enjoyed." *Kimberly Knitwear*, 331 F. Supp. at 1341. Moreover, in *Chevron Chemical Co. v. Voluntary Purchasing Grps.*, 659 F.2d 695 (5th Cir. 1981), the Fifth Circuit applied the Safe Distance Rule's principles in directing the district court to craft an injunction which would encompass other iterations of an infringed trademark. Specifically, the court remanded the matter to the district court to ensure that the injunction would "prohibit the use, not only of Trade Dress No. 1, but also efforts by [defendant] to retain at least part of the goodwill originally misappropriated from" plaintiff. *Chevron Chemical*, 659 F.2d at 705–06. Additionally, the Seventh Circuit has employed the Safe Distance Rule's principles in the post-injunction context. *See Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985) (finding the district court's decision to enjoin the use of defendant's fourth proposed logo in contempt proceedings appropriate in light of defendant's "history as an infringer and contemner").

Importantly, in each of aforementioned infringement matters, the district courts had equitable discretion in drafting the injunctions, which included the determination of whether to include explicit prohibitions about additional marks outside from the one found to be infringed. *eBay Inc., et al. v. MercExchange, LLC*,

547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court …").  Upon considering the appropriate remedial action, the Court declines to apply the Safe Distance Rule to the present matter.  Here, the parallel proceedings before the ALJ and the full Commission reveal that there are "so many differences" between the Post-2020 Roxor and the Jeep Trade Dress such that "[t]he average purchaser certainly will know immediately that [the Post-2020 Roxor] is not a Jeep by merely looking at it straight on."  ECF No. 437-3, PageID.44182; ECF No. 446-5, PageID.44490. Indeed, after months of discovery, the ALJ determined that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress, that the degree of similarity is otherwise very low, that Mahindra's intent in designing the modified vehicle weights against a finding of likelihood of confusion, and that the survey evidence weights slight against such a finding.  ECF No. 437-3, PageID.44191.  The Commission agreed and concluded that the redesigned Post-2020 Roxor does not infringe the Jeep Trade Dress.[9]  ECF No. 446-5, PageID.44497.

_____

[9] Importantly, the Commission determined that the 19 percent net confusion rate from the Poret survey, which FCA cites to in its present Motion to support its requested relief, "is not significant enough to support likelihood of confusion, particular in view of the [ALJ's determination] and the Commission's findings as to *DuPont* factor 1 that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress." *Id.* at PageID.44495.  In making this determination, the Commission cited authority which explains the need to carefully view survey evidence below the 20 percent threshold "against the background of other evidence weighing for and against a conclusion of likely confusion." *Id.*  The Court takes notice of FCA's

The Court declines to depart from the parallel proceedings before the ITC at this juncture, including those related to the Poret survey, after recently adopting the parties' arguments from prior briefs that the ITC's findings related to the 2018-2019 Roxor have preclusive effect in these proceedings.  ECF No. 416; *see also* ECF No. 400, PageID.42209; ECF No. 409, PageID.42606–07.  Even if the Court chose to make a finding opposite the ITC's conclusion that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress, which it does not, the Court would still find that the procedural posture of the instant matter cautions against applying the Safe Distance Rule.  Indeed, other district courts within this Circuit have hesitated to apply the Safe Distance Rule when outside of the post-injunction context.  *Compare Deere & Co. v. FIMCO Inc.*, 301 F. Supp. 3d 704, 720 (W.D. Ky. 2018) (declining to apply the Safe Distance Rule, the district court emphasized its power to modify the permanent injunction going forward to prevent further infringing conduct), *and IP, LLC v. Interstate Vape, Inc.*, No. 1:14cv-00133-JHM, 2014 WL 5791353, at *7 (W.D. Ky. Nov. 6, 2014) (declining to extend the Safe Distance Rule where no permanent injunction existed with respect to the trademark at issue), *with*

<hr />

citation to cases within the Sixth Circuit which have determined that similar percentages are sufficient to show a likelihood of confusion, ECF No. 447, PageID.44703 n.7.  However, the Court declines to depart from the ITC at this juncture, after recently granting summary judgment in light of the ITC's conclusions, and view the Poret survey results in isolation of the other evidence carefully viewed in the Modification Proceedings.

*Fender Musical Instruments Corp. v. Swade*, No. 3:13-cv-01075, 2017 WL 1299245, at \*4–5 (M.D. Tenn. Apr. 7, 2017) (applying the Safe Distance Rule after finding defendant was in contempt of a prior permanent injunction); *see also Vining Industries, Inc. v. M.B. Walton, Inc.*, 106 F. Supp. 2d 966 (S.D. Ohio 1997) (denoting the Safe Distance Rule's "element of punishment"; "a party who has infringed upon the trademark of another is prevented from doing things which a non-infringer would be permitted to do.").

In sum, the Court declines to apply the Safe Distance Rule in this matter, at this time, to enjoin Mahindra's Post-2020 Roxor.[10]   *eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).   The injunction shall be limited to the 2018-2019 Roxor.   Accordingly, the Court will deny FCA's present Motion to Enjoin.

## IV. CONCLUSION & ORDER

For the reasons articulated above, the Court **HEREBY ORDERS** that Defendant's Motion for Permanent Injunction [#424, 425] is **GRANTED**.   The parties shall submit their stipulated permanent injunction to the Court no later than May 21, 2021.

---

[10] In concluding that the Safe Distance Rule does not apply to this case, the Court need not address the parties' arguments related to whether issue preclusion applies to the ITC's Modification Proceedings (specifically, the ITC's discussion of the Safe Distance Rule).  ECF No. 447, PageID.44694; ECF No. 451, PageID.44986–89.

**IT IS FURTHER ORDERED** that Defendant's Motion to Enjoin Post-2020

Roxor Design in Accordance with the Safe Distance Rule [#446, 447] is **DENIED**.

**IT IS SO ORDERED.**

Dated:    May 17, 2021

s/Gershwin A. Drain
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 17, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager