UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAHINDRA & MAHINDRA LTD. and
MAHINDRA AUTOMOTIVE NORTH
AMERICA, INC.,

Plaintiffs/Counterclaim Defendants,

v.

FCA US LLC,

Defendant/ Counterclaim Plaintiff.

Case No. 18-cv-12645

U.S. District Court Judge
Gershwin A. Drain

_____/

## OPINION AND ORDER DENYING FCA US LLC'S RENEWED MOTION TO ENJOIN POST-2020 ROXOR IN ACCORDANCE WITH THE SAFE-DISTANCE RULE (ECF Nos. 477, 478)

### I.   INTRODUCTION

On August 1, 2018, Defendant/Counterclaim Plaintiff FCA US, LLC ("FCA")

filed a complaint with the United States International Trade Commission ("ITC")

claiming, *inter alia*, that the 2018–2019 Roxor— a utility terrain vehicle ("UTV")

designed by Plaintiffs/Counterclaim Defendants Mahindra & Mahindra, Ltd.

("M&M") and Mahindra Automotive North America, Inc. ("MANA") (collectively

"Mahindra")—infringed the trade dress associated with FCA's Jeep vehicles and

FCA's registered trademarks.  *See* ECF No. 1-3.  On August 23, 2018, Mahindra

1

initiated the instant action seeking, *inter alia*, a declaratory judgment that the 2018–2019 Roxor did not infringe the Jeep Trade Dress and FCA's trademarks.  *See* ECF No. 1.  FCA brought counterclaims alleging, *inter alia*, trademark and trade dress infringement as well as trademark dilution.  *See* ECF No. 47.

The ITC affirmed the Initial Determination of the Administrative Law Judge ("ALJ") that the 2018–2019 Roxor infringed the Jeep Trade Dress, *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, USITC Pub. 5257, 12–13 (June 18, 2020) (Commission Opinion), and issued orders barring Mahindra from, *inter alia*, importing, selling, or marketing vehicles "that infringe the Jeep Trade Dress or any trade dress confusingly similar thereto," ECF No. 424-7, PageID.43163.  In accordance with ITC requirements, Mahindra then petitioned the ITC for an expedited determination that neither the 2020 nor the Post-2020 Roxor models infringe the Jeep Trade Dress or, in the alternative, modification of its orders to exclude the Post-2020 Roxor.  *See Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, USITC Pub. 5257, 1 (Dec. 22, 2020) (Modification); *Mahindra & Mahindra, Ltd. v. FCA US, LLC*, No. 21-2605, 2022 WL 4299770, *2 (6th Cir. Sept. 19, 2022).  The ALJ found that the safe-distance rule was inapplicable, determined there was no likelihood of consumer confusion as to origin, sponsorship, or approval, and recommended that the ITC orders be modified to exclude the Post-2020 Roxor.  *Certain Motorized Vehicles and*

2

*Components Thereof*, Inv. No. 337-TA-1132, USITC Pub. 5257, 10, 28 (Oct. 20, 2020) (Modification Proceeding).  The ITC determined that the ALJ did not err in declining to apply the safe-distance rule and held that the Post-2020 Roxor did not infringe the Jeep Trade Dress because there was no likelihood of confusion.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 12, 23 (Modification).  The Federal Circuit affirmed.  *Mahindra & Mahindra Ltd. v. Int'l Trade Comm'n*, No. 2020-2173, 2022 WL 703904, at *1 (Fed. Cir. Mar. 9, 2022).

Pursuant to the Parties' stipulation, this Court entered a permanent injunction against the 2018–2019 Roxor on May 24, 2021.  ECF No. 460.  However, on May 17, 2021, this Court denied FCA's Motion to Enjoin Post-2020 Roxor in Accordance with the Safe-Distance Rule (ECF Nos. 446 and 447).  *Mahindra & Mahindra Ltd. v. FCA US LLC*, No. 18-cv-12645, 2021 WL 1960975, at *10 (E.D. Mich. May 17, 2021).  In so doing, the Court relied on the ITC's likelihood of confusion analysis and the procedural posture of the case and declined to apply the safe-distance rule. *Id.* at *10.  The Sixth Circuit reversed, holding that this Court abused its discretion by relying solely on those factors.  *Mahindra*, 2022 WL 4299770, at *12.  The Sixth Circuit thus remanded for this Court to reconsider whether to apply the safe-distance rule.  *Id*.

3

Presently before the Court is FCA's Renewed Motion to Enjoin Post-2020 Roxor in Accordance with the Safe-Distance Rule.  ECF Nos. 477, 478.[1]  Mahindra timely responded, ECF No. 481, FCA replied, ECF Nos. 483, 484, and Mahindra filed a sur-reply, ECF No. 486.  The Court held a hearing on the Motion on June 1, 2023.  *See* ECF No. 480.  For the following reasons, the Court will **DENY** FCA's Renewed Motion to Enjoin Post-2020 Roxor in Accordance with the Safe-Distance Rule (ECF Nos. 477, 478).

## II.    BACKGROUND

This matter has an extensive factual background and procedural history.  Accordingly, in addition to what has already been discussed *supra*, the Court discusses only that which is relevant to the instant motion.

The Jeep Trade Dress, which is at the heart of this matter and the instant motion, is comprised of six elements:

(i)     A boxy body shape with flat appearing vertical side and rear body panels ending at about the same height as the hood;

(ii)    Substantially flat hood with curved side edges that tapers to be narrower at the front;

(iii)   Trapezoidal front wheel wells with front fenders or fender flares that extend beyond the front of the grille;

---

[1] ECF No. 477 is the public version of this motion, while ECF No. 478 is not redacted and was filed under seal.  As this Opinion will be publicly filed on the docket, the Court only refers to ECF No. 477.

4

(iv)    Flat appearing grille with vertical elongated grille slots and a trapezoidal outline that curves around round headlamps positioned on the upper part of the grille;

(v)    Exterior hood latches; and

(vi)    Door cutouts above a bottom portion of the side body panels.

ECF No. 1-3, PageID.49.

As stated *supra*, Mahindra petitioned the ITC for a modification proceeding to determine whether the Post-2020 Roxor infringes the Jeep Trade Dress. *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 1 (Modification). The ITC decided to hold a modification proceeding on July 20, 2020. *Id.* Below is a sample of the designs the ITC compared.



| Post-2020 ROXOR | Jeep Wrangler® |
| --- | --- |

*Id.* at 16.

During the modification proceeding, the ALJ determined that "there were so many differences between the Post-2020 Roxor and the Jeep Trade Dress that the overall appearance of the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress. *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-

5

TA-1132, 19 (Modification Proceeding).  Specifically, the ALJ found that, while the Post-2020 Roxor maintains Elements 1 and 6, "the overall appearance, even considering these elements, is not substantially similar to the Jeep Trade Dress."  *Id*. The ITC adopted these findings with expanded analysis.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 18 (Modification).

At the time of the modification proceeding, the Post-2020 Roxor had not yet been sold, so there was no evidence of actual confusion and the Parties relied on consumer surveys.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 20 (Modification Proceeding).  The ITC ultimately discredited Mahindra's survey, which found a 0% net confusion rate, because it used a flawed control vehicle.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 20 (Modification).  While the ITC found FCA's survey "more reliable and credible," it found that the 19% net confusion rate demonstrated by that survey was "not significant enough to support a likelihood of confusion, particularly in view of the [ALJ] and the [ITC]'s findings . . . that the Post-2020 Roxor is not substantially similar to the Jeep Trade Dress."  *Id.* at 21.  The ITC also noted that "unsolicited press and social media evidence suggest[ed] little evidence of actual confusion between the Post-2020 Roxor and the Jeep Trade Dress."  *Id*.

Finally, relying on testimony from Mahindra's CEO and head of design, the ALJ determined that "the evidence demonstrates that in designing the Post-2020

Roxor, Mahindra did not intend to continue to benefit from infringing the Jeep Trade Dress." *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 27 (Modification Proceeding). The ITC also adopted this finding. *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 23 (Modification).

## III. LAW & ANALYSIS

### A. Legal Standard

As the Sixth Circuit explained:

The safe-distance rule is an equitable rule applied by courts to craft permanent injunctions for known infringers of intellectual property. *See* [*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 544 (6th Cir. 2014)]. "Once a party infringes on another's trademark or trade dress, the confusion sowed 'is not magically remedied' by *de minimis* fixes." *Id.* (quoting *Taubman Co. v. Webfeats*, 319 F.3d 770, 779 (6th Cir. 2003)). Rather, because "confusion lingers," the safe-distance rule requires the infringer "not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Id.* (quoting *Taubman*[*Co. v. Webfeats*], 319 F.3d [770,] 779 [(7th Cir. 2003)]). Accordingly, the safe-distance rule "prevent[s] known infringers from using trademarks whose use by non-infringers would not necessarily be actionable." *Id.* (quoting *Taubman*, 319 F.3d at 778–79); *see also ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 644 (6th Cir. 2020).

. . . Courts have found that the safe-distance rule is "especially" useful "where the infringement was abusive or in bad faith." *PRL USA*

*Holdings*[*, Inc. v. U.S. Polo Ass'n*], 520 F.3d [109,] 117 [(2d Cir. 2008)] (citing *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:4 (4th ed. 2008)); *cf. Broderick*[ *& Bascom Rope Co. v. Manoff*], 41 F.2d [353,] 354 [(6th Cir. 1930)].

*Mahindra*, 2022 WL 4299770, at *4–5.  Thus, in its order of remand, the Sixth Circuit instructed this Court as follows:

> We therefore . . . remand for the district court to reconsider whether it should apply the safe-distance rule.  On remand, the district court may take into account the factual findings of the ITC, but must also consider other factors relevant to applying the safe-distance rule, including potential "linger[ing]" consumer confusion from the 2018–2019 ROXOR . . . and whether Mahindra's "infringement was abusive or in bad faith," . . . .  Those factors are relevant considerations based on precedent; they are not necessarily exhaustive.  We note that, should the district court decide to apply the safe-distance rule, it must then consider the separate question whether the Post-2020 ROXOR stays a "safe distance" from the Jeep Trade Dress.

*Id.* at *12 (citations omitted).

### B. Discussion

#### 1. Whether there is potential lingering consumer confusion

First, the Sixth Circuit instructed this Court to consider the "potential 'linger[ing]' consumer confusion from the 2018–2019 ROXOR."  *Mahindra*, 2022 WL 4299770, at *12 (quoting *Innovation Ventures*, 763 F.3d at 544).  In support of its argument there is still lingering consumer confusion, FCA contends that the Post-

8

2020 Roxor retains features from the 2018–2019 Roxor, which was found infringing, as well as the Jeep Trade Dress; FCA's consumer survey demonstrates a 19% net confusion rate; Mahindra marketed the Post-2020 Roxor as an "evolution" of its prior vehicles; and the fame of the Jeep Trade Dress entitles it to greater protection. *Id.* at PageID.45397–404.

As a preliminary matter, the Court notes there is ambiguity as to whether this factor is meant to compare the modified redesign to the asserted trade dress or the originally infringing product. *Compare Mahindra*, 2022 WL 4299770, at *7 (discussing prior opinion affirming district court's determination the safe-distance rule was violated because "the modified products were confusingly similar to [the plaintiff's] trademark and trade dress" (quoting *Innovation Ventures*, 763 F.3d at 544)) *with id.* at *6 (discussing prior opinion finding violation of the safe distance rule by comparing the defendant's redesigned name to its initially infringing name (quoting *Broderick*, 41 F.2d at 354)). Although the Parties do not expressly address the issue, their analysis of the factor indicates they disagree. *Compare* ECF No. 481, PageID.45711–12 (arguing there is not potential lingering confusion due to differences between the Post-2020 Roxor and the Jeep Trade Dress) *with* ECF No. 477, PageID.45397 ("[T]his Court must consider potential lingering confusion because the safe-distance rule forces adjudicated infringers (like Mahindra) to make

9

a clean break from their infringing product and eliminate all vestiges of the prior infringement.").

In discussing the safe-distance rule while this matter was on appeal, the Sixth Circuit explained, "[B]ecause 'confusion lingers,' the safe-distance rule requires the infringer 'not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed *from any characteristic of the plaintiff* so as to put the public on notice that the two are not related.'"  *Mahindra*, 2022 WL 4299770, at *4 (emphasis added) (quoting *Innovation* Ventures, 763 F.3d at 544).  This suggests that comparing the modified redesign to the asserted trade dress is more in line with the purpose of the "potential lingering confusion" factor. As such, the Court will proceed accordingly.

### i.   Retained features

Given this determination, FCA's first argument in support of the "potential lingering confusion" factor, that the Post-2020 Roxor retains elements of previous Roxor models, is misplaced.  However, the Court agrees with FCA's assertion that the Post-2020 Roxor retains elements of the Jeep Trade Dress.  Specifically, the Court acknowledges the ITC's findings that the Post-2020 Roxor retains "a boxy body shape with flat appearing vertical side" (Element 1) and "door cutouts above a

bottom portion of the side body panels" (Element 6).[2] *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 12–13, 15 (Modification). Nevertheless, the Court does not conclude that the retention of some elements necessarily results in potential lingering confusion with the Jeep Trade Dress, even when the Post-2020 Roxor is viewed from the side.   *Contra* ECF No. 477, PageID.PageID.45399 (arguing that "the Post-2020 Roxor has overlapping features and obvious visual similarities with the Jeep Trade Dress" when viewed from the side and rear).   Indeed, during the initial violation proceedings, FCA successfully argued that the Jeep Trade Dress is not generic because, while some third-party vehicles use some of the elements, none use all six.  *See Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 16 (Modification) (citing *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 12–13 (Commission Opinion)).

---

[2] FCA implies the ITC also found that Mahindra retained a portion of Element 4 by including round headlamps in the Post-2020 Roxor.  ECF No. 477, PageID.45400. This overstates the situation. The ITC did not make an explicit finding that Mahindra had retained a portion of Element 4.   *See Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 14–15 (Modification).   Instead, the ALJ found that "[t]he only similarity between the Post-2020 Roxor and the Jeep Trade Dress is that the headlamps remain round.  Overall, the front grille is strikingly dissimilar to [E]lement 4 of the Jeep Trade Dress."  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 18 (Modification Proceeding). Likewise, this Court finds the other changes to the Post-2020 Roxor's grille are so drastic that the retention of round headlamps is negligible.

Furthermore, during the modification proceeding, the ALJ found that in contrast to the Jeep Trade Dress, "the side view [of the Post-2020 Roxor] shows that the hood is lacking latches, the front wheel wells are different, and the front fender is different, even viewed from the side." *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 19 (Modification Proceeding). Moreover, FCA's own expert noted that "the presence or absence of [Element 6] has a 'de minimis' impact on consumer perception of the trade dress." *Id.* at 24 (citation omitted). The Court adopts these factual findings and agrees that despite retaining Elements 1 and 6 of the Jeep Trade Dress, the Post-2020 Roxor has sufficient differences, even to its side view, to dispel potential lingering confusion.

The Court also notes the Post-2020 Roxor prominently displays the Mahindra logo on the front of the vehicle. The Federal Circuit has held that brand-name labeling may be highly probative evidence in a likelihood of confusion analysis. *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1124 (Fed. Cir. 2018). The logic in considering logo placement when conducting a likelihood of confusion analysis also supports doing so when considering potential lingering confusion for purposes of applying the safe-distance rule. Here, the conspicuous placement of the Mahindra logo undermines potential lingering confusion. This is further supported by the ITC's finding that "[t]he average purchaser certainly will know immediately that [the Post-2020 Roxor] is not a Jeep

12

by merely looking at it straight on." *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 16 (Modification).  The Court finds this particularly relevant given that the average consumer is unlikely to purchase a UTV like the Post-2020 Roxor without a decent amount of research, including viewing the vehicle head on.  *See DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 852 (6th Cir. 2023) ("[W]hen services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases.  When services are sold to such buyers, other things being equal, there is less likelihood of confusion." (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 285 (6th Cir. 1997))).  Indeed, the ALJ noted that consumers spend an average of over 14 hours researching automobiles prior to purchase.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, USITC Pub. 5257, 45 (Nov. 18, 2019) (Initial Determination).

This consideration thus militates against finding potential lingering confusion.

### ii.    Consumer perception

FCA also relies on the consumer survey it developed for the modification proceeding (the "Poret Survey") to argue that a 19% net confusion rate demonstrates potential lingering confusion.  ECF No. 477, PageID.45401.  However, the Court notes the Poret Survey used a test image that was "representative of," but not identical to, the final design for the Post-2020 Roxor.  *Certain Motorized Vehicles*

13

*and Components Thereof*, Inv. No. 337-TA-1132, 20 (Modification Proceeding). The Court also notes the Poret Survey was conducted before the Post-2020 Roxor launched.  ECF No. 481, PageID.45713.

As such, Mahindra contends that the Poret Survey's findings are stale because they do not reflect current market conditions.  *Id*.  Additionally, Mahinda asserts that the Poret Survey's findings are undermined by unsolicited social media responses to the Post-2020 Roxor.  *Id*.  Specifically, the design for the Post-2020 Roxor leaked and became a topic of discussion on a Mahindra enthusiasts' Facebook page.  ECF No. 481-4, PageID.45788.  Mahindra's experts analyzed the 95 comments on the post and determined the following: 2% of commenters indicated a similarity between the Post-2020 Roxor and a Jeep while 27% of commenters indicated a similarity between the Post-2020 Roxor and another vehicle or other object, 2% of commentors thought the vehicle was similar to the 2020 Roxor, no commentors thought the vehicle was similar to the 2018–2019 Roxor, and 31% of commentors preferred one of the previous iterations.  *Id.* at PageID.45789.

The Court recognizes that a formal consumer survey would ordinarily be entitled to greater weight than social media comments.  However, the ITC found the Facebook comments were a credible representation of consumer perception.  *See Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 17

(Modification).  And this Court does as well.[3]  More importantly, the Court notes that unlike during the ITC modification proceeding, the Post-2020 Roxor has now been available in the U.S. market for over two years.  *See* ECF No. 481, PageID.45699.  Nevertheless, FCA provides no evidence of actual confusion.  *See* ECF No. 477.  FCA argues that Mahindra needs to put forth affirmative evidence that market conditions have changed.  ECF No. 483, PageID.45935.  Yet, as the Sixth Circuit has explained, "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion is weighted heavily only . . . when the particular circumstances indicate such evidence should have been available."  *Daddy's Junky Music*, 109 F.3d at 284 (citations and internal quotation marks omitted)).  The Court finds that, given that the Post-2020 Roxor has been sold in the United States for over two years, the present circumstances are such that evidence of lingering confusion should have been available.  This is particularly true where the survey on which FCA relies uses

---

[3] The Court notes that the fact that the post and comments were made on a Mahindra enthusiasts' Facebook page helps their credibility in this situation.  *Cf. Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 518 (6th Cir. 2007) (affirming district court's decision to afford consumer survey little weight because "the study failed to limit the respondent population to those persons likely to purchase defendant's products" (citing *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 487–88 (5th Cir. 2004)).

a test image slightly different from the vehicle that has, in fact, been on the market. Thus, this consideration also militates against finding potential lingering confusion.

### iii.    Mahindra's marketing

Next, FCA asserts that "instead of cleanly breaking from the Jeep ® brand, Mahindra continued to use subtle but effective marketing techniques to capitalize on the goodwill that it fraudulently created in the Roxor brand."  ECF No. 477, PageID.45402.  Specifically, FCA contends that Mahindra kept the Roxor name, made iterative changes to first the 2020 then the Post-2020 Roxor, and marketed the Post-2020 Roxor as an "evolution" of its prior vehicles.  *Id.* at PageID.45403.

These arguments are unavailing.  FCA does not provide, nor is the Court aware of, any authority to support the position that an infringer must change the name of a product when that name was not, itself, found infringing.  Additionally, the advertisements with which FCA takes issue—the ones that reference the Roxor's "history" or "heritage"—all seem to be advertisements for the 2018–2019 Roxor or the 2020 Roxor, neither of which are presently for sale.  ECF No. 477-7, PageID.45484, PageID.45486–87.  Notably, some, if not all, of these advertisements are only still available through third party websites, not Mahindra.  ECF No. 477-7, PageID.45484–85.  Moreover, while FCA provided examples of advertisements linking the 2020 Roxor to the 2018–2019 Roxor, ECF No. 477-7, PageID.45487–

16

94, it provided no such examples for the Post-2020 Roxor, *see id.* at PageID.45495.[4]

In contrast, Mahindra counters that its advertising for the Post-2020 Roxor is distinct from its marketing of the prior designs as recreational vehicles in that the advertising for the Post-2020 Roxor emphasizes the vehicle's use in agricultural and industrial markets. ECF No. 481, PageID.45714 (citing ECF No. 481-7, PageID.45902). The Court also notes that Mahindra's website presents the vehicle from a front-facing view, prominently displaying the drastically different grille, unlike the advertisements FCA provided for the 2020 model. *See* ECF No. 481-7, PageID.45904.

Thus, this consideration also militates against finding potential lingering confusion.

### iv.    The fame of the Jeep Trade Dress

Finally, FCA contends that the fame of the Jeep Trade Dress warrants greater protection because consumers may take less care in purchasing a product under a famous trade dress. *See* ECF No. 477, PageID.45404–05. The Court acknowledges that the ALJ found that "the Jeep Trade Dress has acquired substantial secondary meaning" and thus "its fame weigh[ed] in favor of a likelihood of confusion."

---

[4] FCA's expert discussed that Mahindra's advertising at the time did not show the Post-2020 Roxor design and instead "hinted at a new design to come with several #Roxorotherside videos that continued to show the 2020 Roxor." ECF No. 477-7, PageID.45495.

*Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 46 (Initial Determination).  The Court agrees with the ALJ's finding.

Nevertheless, the Court notes that the cases on which FCA relies for its position that the Jeep Trade Dress is entitled to greater protection due to its fame are all at least twenty years old and all concern trade*marks*, not trade dress.  *See Recot, Inc. v. Becton*, 214 F.3d 1322, 1327 (Fed. Cir. 2000) (finding the Trademark Trial and Appeal Board erred by discounting fame of the opposer's mark because the dog food sold under the applicant's mark was completely unrelated to the human snacks sold under the opposer's); *Kenner Parker Toys Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 355 (Fed. Cir. 1992) (finding the Trademark Trial and Appeal Board erred by discounting evidence of similarity between marks for children's modeling clay due to the fame of the opposer's mark); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 675 (Fed. Cir. 1984) (finding the Trademark Trial and Appeal Board erred by discounting fame of opposer's mark).  It is thus not clear that FCA's argument holds in the present day trade dress context, as opposed to this factor being just one of many for the Court to consider.  This feels particularly true given that the ALJ also found that the Jeep Trade Dress was not sufficiently famous apart from the registered Jeep Grille Design Marks to support a trade dress dilution claim.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 61 (Initial Determination).

Regardless, the Court concludes that whatever weight FCA is entitled to due to the fame of the Jeep Trade Dress is undermined by other considerations. As discussed *supra*, consumers are expected to exercise greater care in their purchases when buying more expensive goods. *See DayCab Co*, 67 F.4th at 852 (citation omitted). In this case, the ALJ found that the average price for top-selling UTVs ranges from $12,900 to $19,500 while the average price for a Jeep Wrangler ranges from $34,000 to $37,900. *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 45 (Initial Determination). As such, consumers spend over 14 hours on average doing research before making such purchases. *Id*. In contrast, the cases on which FCA relies in support of this argument concern extremely minor purchases. *See Recot*, 214 F.3d (dog food and human snack foods); *Kenner Parker Toys* 963 F.2d (children's modeling clay); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 675 (Fed. Cir. 1984) (tea). These cases involved "inexpensive products purchased by diverse buyers without exercising much care," and thus "accentuate[d] the significance of a famous mark." *Kenner Parker Toys*, 963 F.2d at 355 (citation omitted). The purchase of a vehicle involves the opposite situation. Here, moreover, both the ITC and this Court have found several differences between the Post-2020 Roxor and the Jeep Trade Dress that the average consumer would notice during a cursory review of the vehicle, let alone over the course of 14 hours of research.

19

Thus, this consideration also militates against finding potential lingering confusion.

*** 

Accordingly, for all the reasons discussed *supra*, the Court holds that FCA has not demonstrated there is a potential for lingering confusion from the 2018–2019 Roxor that would warrant application of the safe-distance rule.

### 2. Whether the infringement was abusive or in bad faith

Next, the Sixth Circuit instructed this Court to consider "whether Mahindra's 'infringement was abusive or in bad faith.'" *Mahindra*, 2022 WL 4299770, at *12. As an initial matter, the Parties dispute whether this factor concerns Mahindra's intent when developing the 2018–2019 Roxor or the Post-2020 Roxor. *Compare* ECF No. 477, PageID.45393–95 (discussing ALJ's findings that Mahindra intended the 2018–2019 Roxor to look like a civilian jeep) *with* ECF No. 481, PageID.45705 (discussing Mahindra's efforts in obtaining ITC approval for the Post-2020 Roxor design). In other words, the Parties dispute whether the Court should consider Mahindra's intent in developing the initially infringing product or in developing the product potentially subject to the safe distance rule.

The Sixth Circuit's Opinion does not explicitly address this issue. *See Mahindra*, 2022 WL 4299770. However, the Sixth Circuit found that this "case's procedural posture does not caution against applying the safe-distance rule" because,

20

*inter alia*, "[l]ingering confusion from a known infringement . . . may justify the application of the safe-distance rule in crafting an *initial* injunction regarding redesigns." *Id.* at *11–12 (emphasis added) (collecting cases).  The application of the safe-distance rule to determine the scope of an initial injunction necessarily implies that courts should consider the infringer's intent when developing the infringing product.  This seems to be consistent with the purpose of the safe-distance rule: to stop a known infringer from "preserv[ing] . . . a good will acquired through fraud."  *Broderick*, 41 F.2d at 354.  As such, the Court concludes that the "whether the infringement was abusive or in bad faith" factor concerns whether the infringer's development of the initially infringing product was malicious.

Given this determination, the Court concludes that this factor weighs in favor of applying the safe-distance rule.  The ALJ's Initial Determination specifically found that "[t]he evidence shows that Mahindra intended the Roxor to look similar to the [civilian jeep]." *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 32 (Initial Determination).  For example, the ALJ found that "the Roxor's design arose from an idea to repurpose the design of a THAR vehicle, which according to a Mahindra witness, 'looked like an old army jeep.'"[5]  *Id.* (citation

---

[5] Beginning in the late 1940s, Mahindra acquired from FCA's predecessors in interest the license to manufacture and sell a Jeep-style vehicle, called a THAR, in India and other international markets.  ECF No. 1, PageID.5.

omitted).    Additionally, Mahindra's CEO and President made several statements during his deposition about how the 2018–2019 Roxor looks like a civilian jeep. *See, e.g.*, *id.* at 41 ("And everyone understands that our vehicle is a [civilian jeep], is basically a [civilian jeep] . . . ." (citation omitted)).

Despite the ALJ's findings, Mahindra contends that FCA had not registered its trade dress prior to the launch of the 20182019 Roxor, and Mahindra's intent was to utilize a similar useful design as opposed to a bad faith intent to infringe a known right or to deceive or confuse consumers.  *See* ECF No. 481, PageID.45709–10.

Mahindra's notice argument is legally disingenuous.  There is no question that the Lanham Act recognizes actions for infringement of unregistered trade dress as long as the trade dress has acquired secondary meaning.  *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000).  During the initial violation hearing, the ALJ determined that FCA has legal rights in the Jeep Trade Dress because it acquired secondary meaning prior to the launch of the 2018–2019 Roxor and the Jeep Trade Dress is neither generic nor functional.  *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 35, 37, 38 (Initial Determination).  Mahindra's assertion that it did not intend to confuse consumers is also undermined by the ALJ's findings.  Specifically, the ALJ determined that:

> the evidence shows that Respondents: (1) knew consumers would associate the outward appearance of the THAR with "an old Wills or an old [civilian jeep]"; (2) knew the Roxor would create the same

commercial impression as the THAR; and (3) began manufacturing the Roxor without changing its design (except for the grille) to avoid a commercial impression that clearly links its vehicle to the Jeep CJ.

*Id.* at 53. Accordingly, this factor weighs in favor of application of the safe-distance rule.

### 3. Other factors

As the Sixth Circuit repeatedly explained, the safe-distance rule is a "specialized application of the courts' traditional equitable power to craft permanent injunctions *tailored to the needs of each case*." *Mahindra*, 2022 WL 4299770, at \*9 (emphasis in original) (quoting *Innovation Ventures*, 763 F.3d at 545). Indeed, the Sixth Circuit noted that the factors it instructed this Court to consider—potential lingering consumer confusion from the 2018–2019 Roxor and whether Mahindra's infringement was abusive or in bad faith—are "not necessarily exhaustive." *Id.* at \*12. Furthermore, FCA has agreed that the Court "may consider other factors such as the ITC findings." ECF No. 477, PageID.45392. As such, the Court also considers Mahindra's intent in designing the Post-2020 Roxor and the ITC's factual findings regarding the similarities and differences between the Jeep Trade Dress and Post-2020 Roxor.

### v.   Mahindra's intent in designing the Post-2020 Roxor

First, although the Court determined that the "whether the infringement was abusive of in bad faith" factor concerned Mahindra's intent when developing the 2018–2019 Roxor, the Court finds that Mahindra's intent in developing the Post-2020 Roxor is also relevant to its determination of whether the Post-2020 Roxor should be enjoined.

Here, the ITC adopted the ALJ's finding that "the evidence demonstrates that in designing the Post-2020 Roxor[,] Mahindra did not intend to continue to benefit from infringing the Jeep Trade Dress." *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 22 (Modification) (citation and internal quotation marks omitted).  In so doing, the ITC relied on testimony from Mahindra's CEO that its "goals were to make the Post-2020 ROXOR design a significant departure from earlier designs, to give the vehicle a new and distinctive look, to make the look more rugged, and to eliminate any question of a possible relationship between Mahindra and FCA." *Id.* (citation and internal quotation marks omitted).  The ITC also relied on testimony from Mahindra's head of design that he had been instructed "to make the design a significant departure from the past and to avoid the Asserted Jeep Trade Dress." *Id.*  Notably, during the hearing on this Motion, FCA also "accept[ed]" that Mahindra had good intent in the redesign.  Accordingly, the Court adopts the ITC's finding that Mahindra acted in good faith when designing the Post-2020 Roxor.

This finding is further supported by the timing of the Post-2020 Roxor's launch.  Specifically, in addition to seeking a determination from the ITC that the Post-2020 Roxor did not infringe the Jeep Trade Dress—and the Court acknowledges that Mahindra was required to do so by the ITC—Mahindra also waited to launch the Post-2020 Roxor until this Court entered the stipulated permanent injunction that explicitly excluded that model.  *See* ECF No. 460, PageID.45228–31.

Finally, the Court notes that Mahindra's intent with respect to its redesign is drastically different from other redesign cases in which the safe-distance rule has been applied.  *See Innovation Ventures*, 763 F.3d at 543–46 (affirming application of the safe-distance rule where the defendants violated the injunction by continuing to sell enjoined products and selling modified products that were confusingly similar to the protected marks using different companies); *Broderick*, 41 F.2d at 354 (finding the defendant in contempt of the injunction where he began distributing a similar product through a different company and changed only the placement of hyphens in the enjoined name).

Accordingly, for all these reasons, the Court finds that Mahindra's intent in designing the Post-2020 Roxor militates heavily against application of the safe-distance rule.

####    vi.    ITC's factual findings

While the Sixth Circuit determined that this Court had "abused its discretion in relying *solely* on the ITC's likelihood-of-confusion analysis," the Sixth Circuit explicitly stated that this Court "may take into account the factual findings of the ITC." *Mahindra*, 2022 WL 4299770, at *12 (emphasis added).  As this Court has previously stated, the ITC's factual findings with respect to the Post-2020 Roxor militate against application of the safe-distance rule.

Specifically, the ITC found that the Post-2020 Roxor retained only two of the six elements of the Jeep Trade Dress.  With respect to Element 1 ("a boxy body shape with flat appearing vertical side and rear body panels ending at about the same height as the hood"), Mahindra only changed the height between the vertical side and rear body panels "about an inch" which did "not result in any appreciable difference." *Certain Motorized Vehicles and Components Thereof*, Inv. No. 337-TA-1132, 12 (Modification) (cleaned up).  Similarly, the ITC found that Element 6 ("[d]oor cutouts above a bottom portion of the side body panels") "is still part of the Post-2020 Roxor." *Id.* at 15 (citation and internal quotation marks omitted).

In contrast, with respect to Element 2 ("substantially flat hood with curved side edges that tapers to be narrower at the front"), the ITC found that "the Post-2020 Roxor hood does not have side edges that taper to be narrower in front" and that "the hood does have a 'decorative step-up' that also differentiates the hood from

26

the Jeep Trade Dress hood, which requires a 'substantially flat hood." *Id.* at 13 (cleaned up).  Likewise, the ITC found that Element 3 ("trapezoidal front wheel wells with front fenders or fender flares that extend beyond the front of the grille") was "substantially different" from the Post-2020 Roxor because of "the rounded front wheel well and lack of front fenders that extend beyond the front of the grille." *Id.* at 14 (cleaned up).  Additionally, the ITC found that Element 4 ("flat appearing grille with vertical elongated grille slots and a trapezoidal outline that curves around round headlamps positioned on the upper part of the grille") was "strikingly dissimilar" because the Post-2020 Roxor "does not have a 'flat appearing grille,' 'vertical elongated grille slots,' and 'a trapezoidal outline that curves around headlamps positioned on the upper part of the grille.'"  *Id.* at 14–15 (citation omitted).  Lastly, the ITC found that Element 5 ("exterior hood latches") "is missing from the Post-2020 Roxor vehicle." *Id.* at 15 (citation omitted).

As discussed in Section III, Subsection B, Part 1, Subpart i *supra*, the Court finds the two retained elements of the Jeep Trade Dress do not outweigh the drastic changes made to the other four.  Accordingly, the Court finds that the ITC's factual findings militate against application of the safe-distance rule.

## IV.   CONCLUSION

Given the above analysis, the Court declines to apply the safe-distance rule to the instant case.  While the "whether the infringement was abusive or in bad faith factor" weighs in favor of the rule's application, all the other factors the Court considered weigh against.  Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that FCA US LLC's Renewed Motion to Enjoin Post-2020 Roxor in Accordance with the Safe-Distance Rule (ECF Nos. 477, 478) is **DENIED**.

**IT IS SO ORDERED**.

/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  July 19, 2023

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 19, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager